Between assignees in equity of a chose in action, the prior or assignee prevails.

Decree.

---

## Divine vs. Harvie.

Appeal from the Franklin Circuit; HENRY DAVIDGE, Judge.

Constitutional law. Suits against government. Public creditors. Auditor and Treasurer. Choses in action. Mandamus. Statutes. Construction.

Judge MILLS delivered the Opinion of the Court.

THE legislature of Kentucky, at their session of 1825, allowed to Roger Divine, $252 50, for cutting and piling wood, for the house of representatives, during that session, and this allowance was made in the ordinary appropriation bill.

*Margin notes:* CHANCERY. Case 101. June 27. Case stated.

7m 439, f 103 463
7tm439 f104 19
7tm439 106 719

DIVINE
vs.
HARVIE.

John Harvie, who was a creditor of said Divine, by judgment and an execution of *fieri facias* thereon, returned, "no property found," filed his bill in equity, to subject this claim of Divine against the State, to the satisfaction of his judgment under the act of assembly which authorizes a bill in equity to subject equitable estates and choses in action to the satisfaction of such judgments. He made said Divine, the Auditor and Treasurer of the State, parties, and prayed that the Auditor might be directed by the decree of the court to draw the warrant in his favor, and the Treasurer to pay it in satisfaction of so much of the judgment.

Demurrer to the bill overruled, and decree for Harvie.

There being no dispute about the facts of the cause, Divine submitted the case to the court on demurrer to the bill, for a final decree. The court below decreed in favor of the complainant and directed the Auditor to draw the warrant to Harvie, and the Treasurer to pay him the amount.

From this decree Divine has appealed.

Statute subjecting choses in action to the payment of debts.

The act of assembly, under which these proceedings were had, reads thus:

"Whenever an execution of *fieri facias*, founded upon any judgment or decree, or upon any bond having the force of a judgment, shall issue to the proper officer, and be returned, as to the whole or any part thereof, in substance, that the defendant hath no effects in his bailiwick to satisfy the same, the proper court or courts of chancery shall have jurisdiction, on bill filed, to subject to the satisfaction of such judgment, decree or bond, *any choses in action* belonging to the debtor, and also any equitable or legal interest in any estate, *real*, personal or mixed, which the debtor may be entitled to; and to that end may bring other parties before the court, and make such decree as may be equitable under the jurisdiction hereby conferred."

The expressions of this statute are very broad, and it does subject to the power of the chancellor, the interest of the defendant of almost every character. It is now our part to consider whether it is broad enough to reach this demand of Divine a-

gainst the State and subject it to his debts; or whether this appropriation by the State is excluded in this provision.

**Divine vs. Harvie.**

It seems to be conceded on all hands, that the State cannot be made a party defendant, and is not suable in her own courts.

State cannot be sued in her own courts.

Although the constitution has declared, that "The General Assembly shall direct by law in what manner and in what courts suits may be brought against the commonwealth," yet that body has never complied with this direction; but has hitherto kept in their own power the granting of justice to creditors of the State on petition. This voluntary grant of the State to individuals is the only judgment and execution to which the State is subject. Whatever, then, the claims of Divine may be against the State, and however clearly they may be acknowledged, the State cannot become a garnishee; and we cannot suppose that this act, granting jurisdiction to the chancellor, was intended to make the State suable.

There has been no enactment, under the clause of the constitution, which directs the legislature to provide how suits shall be brought against the state.

State cannot be made a garnishee.

Nor do we conceive that the Auditor and Treasurer are proper parties to the controversy; or that they can be used as a substitute for the State. They are not officers appointed to defend the interest of the State generally, although by special act of assembly they may be used as such. The attorney general has more claims to the general appointment, to defend the rights of the State.

Suit cannot be maintained against the auditor and treasurer as parties, in place of the state, to obtain a warrant and money from the treasurer.

The only analogous case, in our recollection, which might be supposed to give color to the right of making the Auditor and Treasurer parties, when the State could not be sued, is that of Osborn vs. United States Bank, 9 Wheat. 738. But the analogy between the cases fails in an important particular. In that case, under an act of the general assembly of Ohio, the Auditor issued his warrant, to an officer of his own appointment, to seize and take by distress, from the Bank of the United States, or one of its branches, a sum of money assessed by an act of the legislature on the branch, as a tax due the State for exercising the corporate franchise within the State. The officer so appointed executed the war-

Case of Osborn vs the Bank of the U. S. cited, and its principle stated.

rant, took $100,000, and deposited it with the Treasurer, who received it, and the bill brought by the bank with injunction, made the Auditor, the officer' ther attempts to execute the act of the legislature, and of distress, and Treasurer, parties, restraining furpraying a restoration in *specie* of the sum already taken. It was objected, that the State was not suable; that it was a controversy between the bank and the State, substantially; and of course, that the suit would not lie. It was ruled by the court, that if the State had been liable to suit, the bank would have had its election, to sue the State, or her agents, who had become liable, by *attempting to execute a void act,* under which they could not justify; and of course as the State could not be sued, her exemption did not defeat the cause of action against the agents; that they, by executing a void act, were personally liable, and by reason of that personal liability, they were proper parties, and therefore the proceedings against them might be sustained without joining the State, just as the actual tresspassor, who commits his trespass *at the command* of another, may be made responsible alone, without uniting the person who gave the command.

*Auditor and treasurer cannot be made parties to a suit, as garnishees or stake holders of the public money.*

In this case, there is a total want of personal liability on the part of the Auditor or Treasurer. There is no claim against them as individuals; and as officers, they are not appointed to defend for the State, and of course there is a total defeat of parties here as garnishees, or stakeholders of the fund, which the chancellor is called upon to subject.

*Creditor of the state cannot be compelled, by bill under the act subjecting choses in action, to assign his warrants on the treasury, or otherwise transfer the demand to his creditor.*

As the State is not suable, and the Auditor and Treasurer are not proper parties in lieu of the State, it remains to inquire whether this bill can be sustained against Divine alone, and whether the chancellor ought, or ought not, to compel Divine to transfer this claim, or to give an authority to the Auditor to draw, and the Treasurer to pay over to the complainant. It may be urged that *the equity* of such a course is strengthened, because Divine has a right to the fund, and the complainant cannot make the person who owes it a party, to subject it.

This money due from the State, was *no part of*

the estate of Divine until he received it, because the claim attached to no specific money, and therefore not within those expressions of the act, which subject estate, real, personal or mixed.

Nor can it be strictly said to be a chose in action, which literally signifies a thing for which an action may be brought, and we have seen that no action would or could be brought for this sum, in favor of Divine, against the State.

But as Divine might have proceeded by mandamus against the Auditor and Treasurer, to compel them to pay this money out of the Treasury, in case of their refusal, it may be urged, that the claim comes within the spirit of the term, chose in action, and therefore is at least within the equity of the act.

This reasoning is entitled to weight, and might command our assent, was it not for another rule of law, which operates to the exoneration of this claim. It is a rule, that the commonwealth is not embraced by an act which is made to operate between individuals, unless there is something in the act which shews an intention to subject the State to the same rule.

The act unquestionably intended to subject the debtors of a debtor to the demands of the creditor of but one of them. But did the legislature intend to make the State such a debtor as that she should be compelled to pay her debts, to the creditor of her creditor? We conceive not; and evils might result to the public weal, if contracts made with the State, could, by construction only, be emptied, and made fruitless at the instance of the creditors of her contractor.

The credit of the contractor with government, may, and frequently does, depend upon the credit of the government, the belief that government is able, enables the contractor to obtain what the government needs; and if other creditors can change the destination of the fund, the contractor may sink, and the government suffer injury by the failure.

To make the matter more palpable, we will apply the rule to the government of the United

DIVINE
vs.
HARVIE.

debts due
from the U.
States.
States, and suppose that creditors of her mail con-
tractors, or contractors for the sustenance of the ar-
my, could compel such contractors, by the decree
of a court of equity, to assign over and transfer the
securities and vouchers of the government, for the
demands due, and becoming due, from the govern-
ment. How often, in that event, might the transpor-
tation of the mail fail, by such an interference of cred-
itors, or the sinews of war be cut, and an army be
left destitute. Government, as a sovereign, may con-
tract with whom she will, and the credit, which
she gives by her obligation, may be, and frequently
is, the only credit, which her contractor possesses.
If that credit can be directed to other debts, instead
of the supplies of the government against the will
of her contractors, injury to government, and dis-
grace to the officer, may be the consequence. It
would be a mortifying circumstance, to see a mem-
ber of the legislature rendered unable to pay his
sustenance, while attending on its session, because a
creditor, who never dealt on the credit of the fund
should by injunction, detain his compensation, on
which he obtained credit with his host. Many in-
stances of public injury, and of disgrace to officers,
might be produced, which would result from sup-
posing that the debts due from the government to
her officers and contractors were subjected by the
act, to the same rule with individual debts which
induces the belief, that this class of debts, or choses
in action, if such they can be called, were not in-
tended, and that without express direction, the
courts of equity ought not to bring such contracts
of the State to the same footing with other contracts
and debts. It will be proper that the legislature
should first expressly determine how far with safety
the State's own contracts and engagements shall be
thus involved in danger.

The decree, Judge Owsley dissenting, is reversed
with costs; and cause remanded, with direction to
dismiss the bill with costs.

*Dissent of Judge* OWSLEY.

      I HAVE not been able to bring my
mind to assent to the construction put upon the act

of assembly on which this case turns, by a majority of the court, or the conclusion to which that construction leads. I perceive no good reason for excepting out of the act debts due from government, whilst debts owing by one person to another are admitted to be within it. The interest, which the person to whom debts of either sort are due, has in the money, according to my understanding, comes literally within the provisions of the act. To bring debts due from government within the operation of the act, it is not necessary to maintain that such debts are strictly and technically choses in action. The act has not only subjected to the satisfaction of the judgment of creditors all choses in actions belonging to the debtor, but it has also expressly made subject to judgments all *equitable and legal interest in any estate, real, personal or mixed,* to which the debtor may be entitled; and to my mind it is perfectly clear, that the *interest* which one to whom government is indebted, has in the debt, is an *interest* to which he is entitled in personal estate. Money, as well as any other specific chattel, is personal estate, and the interest to which a person is entitled in any debt owing him, must necessarily be an interest in the money due, and of course an interest in personal estate. If by the rules and usages of equity, it were impracticable to reach debts due from government, there would certainly be great plausibility in excepting debts out of the act. But whilst I admit government cannot be sued, I discover no difficulty in reaching any debts which she may be owing to others. It cannot be done by process against government, but it may be done by acting on the person of him to whom the debts are owing; and although by legislative enaction, the decrees of courts of equity may now, in cases where such a course is proper, be enforced by writ of execution, in ancient times they were most generally enforced by acting on the person of the defendant; and there is nothing in the act of the legislature prescribing a different course, to prevent the court from enforcing its decree, according to the former practice and usage.

Though a debt be owing by government, let the

*Divine vs. Harvie.*

Dissent of Judge Owsley.

DIVINE
vs.
HARVIE.

Dissent of
Judge Ows-
LEY.

consideration of it be what it may, I discover no reason for protecting the person to whom it is owing in the enjoyment of it, and withholding it from the demands of his creditors, that does not equally apply to debts of any other sort. There is, in moral justice, the same obligation on a debtor to apply demands which he may have upon government to the satisfaction of debts owing by him, as there is for the application of demands of any other sort to that purpose. Nor do I perceive the danger to which government will be exposed, by making the act embrace debts actually owing by her. After the debt is payable, it cannot be important to the interest of government, whether the money is paid over to the person with whom it was contracted, or to any other. Though the payment be made to another, the wheels of government may move on as before, without the apprehension of danger to the post office establishment, or fears that members of the legislature may be disturbed in their official deliberations. I view the act in the light of a remedial statute, and conceive that instead of a strict construction, it should be expounded liberally in favor of creditors, for whose benefit it was enacted.

My opinion is, that the debt due from government to Divine is within the provisions of the act, and that he should, by the appropriate decree, be compelled to furnish the necessary means to enable the complainant to recover the money.

*Denny, Haggin and Loughborough* for appellant; *Marshall and Crittenden* for appellee.