Clarke DUNLAP, Movant,

v.

UNIVERSITY OF KENTUCKY STU-
DENT HEALTH SERVICES
CLINIC, Respondent.

Supreme Court of Kentucky.

Feb. 27, 1986.

As Modified on Denial of Rehearing
Sept. 25, 1986.

Timothy N. Philpot, Anggelis & Philpot, Lexington, for movant.

John C. Darsie, Lexington, for respondent.

Richard M. Breen, Hargadon, Lenihan, Harbolt & Breen, Louisville, for amicus—Kentucky Academy of Trial Attorneys.

Robert F. Matthews, Greenbaum, Doll & McDonald, David L. Baker, University Counsel, Ben J. Talbott, Jr., Baird, Kirven, Westfall & Talbott, Louisville, for amicus—University of Louisville.

J. Stephen Kirby, Frankfort, for amicus—Kentucky School Bd. Assn.

R. Hughes Walker, Cabinet for Human Resources, Charles D. Wickliffe, Finance & Admin., Barbara Jones, Corrections Cabinet, Stephen Reeder, Karen A. Powell, Transp. Cabinet, Frankfort, for amicus—Cabinets—Human Resources, Transp., Corrections and Finance.

LEIBSON, Justice.

The issue in this case is whether the appellant's claim was barred by proper application of the doctrine of sovereign immunity. The trial court dismissed the claim on this ground. The Court of Appeals affirmed, holding that its prior decision in *Frederick v. University of Kentucky Medical Center*, Ky.App., 596 S.W.2d 30 (1979) was dispositive. In *Frederick v. University of Kentucky Medical Center*, the Court of Appeals held that, despite the statutory scheme set up in KRS 164.-939–.944, styled "UNIVERSITY OF KENTUCKY MEDICAL CENTER MALPRACTICE INSURANCE," there has been no legislative waiver of sovereign immunity for claims against the Medical Center adequate "to comply with the requirements of

section 231 of the Kentucky Constitution." 596 S.W.2d at 31.

We accepted discretionary review to consider whether the doctrine of sovereign immunity applies to this situation. We reverse, because we have decided that it does not.

The complaint alleges that Clarke Dunlap was a graduate student of the University of Kentucky who paid for and received a flu shot from the clinic at the Medical Center to protect against influenza. Dunlap charges negligence in administering the shot and failure to warn of possible adverse and harmful side effects. He claims that as a result of this negligent injection he contracted Guillain Barre Syndrome (GBS), causing serious and permanent injuries, including quadriparesis.

Section 231 of the Kentucky Constitution provides as follows:

> "Section 231. *Suits against the Commonwealth:*—The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."

The language of Sec. 231 has been uniformly interpreted by this Court as permitting the General Assembly to waive sovereign immunity by appropriate legislation. One example is the limited waiver provided by the Board of Claims Act, KRS 44.070, *et seq. See Motors Insurance Corporation v. Commonwealth*, Ky., 336 S.W.2d 44 (1960). Another is the limited waiver as to the Board of Education when it elects to provide liability insurance for school busses provided in KRS 160.310. *See Taylor v. Knox County Board of Education*, 292 Ky. 767, 167 S.W.2d 700 (1942).

The Court of Appeals' decision in *Frederick v. University of Kentucky Medical Center, supra,* proceeded from the premise that it could not discern a legislative purpose to waive immunity from the statutory language. We cannot reconcile this conclusion with KRS 164.939, which states:

> "*Legislative purpose*—It is the purpose of KRS 164.939 to 169.944 to promote the health and general welfare of the people of the Commonwealth by au-

thorizing the University of Kentucky to establish from its own funds other than general tax revenues a basic coverage compensation fund *to assure itself* that health care malpractice *claims or judgments against itself,* or its agencies will be satisfied. Such purpose is hereby declared to be a public purpose for which public funds may be expended." (Emphasis added.)

From the words of this statute, legislative waiver is plain in its meaning and intent. The only question is whether the statutory language is so imprecise that it fails to accomplish its purpose.

The statutory scheme is that the Board of Trustees of the University "may, at its election, establish a basic coverage compensation fund for the benefit and protection from liability of itself and its agents." KRS 164.941(1). To do so the University "shall pay to the state treasurer the sum of ... $350,000.00." KRS 164.941(1). This sum shall be supplemented by annual contributions as laid out in the enabling legislation. The fund shall be kept by the state treasurer in "a separate account." KRS 164.941(2). "No portion of said fund shall ever lapse to the general fund and income earned from the investment of funds standing to the credit of said account shall accrue and be credited thereto." *Id.* There is also a provision for supplementing the basic coverage fund if at any time it should fail to have sufficient funds to pay all judgments.

After providing for the creation and maintenance of the fund, the statute states that the fund "shall be expended solely in payment of claims for liability arising in favor of any patient from treatment performed or furnished, or treatment that should have been performed or furnished by the University or its agents." KRS 164.941(3).

The statutory scheme is detailed and complete. The language of the statute expressly contradicts the appellee's position that the fund was intended to provide coverage of physicians and other employees,

but not to provide for claims directly against the University. The Act specifies in three or more places that it is intended to provide a fund for the University to pay claims against "itself" as well as its agents.

The decision of the Court of Appeals in *Frederick* is squarely in conflict with our decision *Taylor v. Knox County Board of Education, supra.* In *Taylor,* we stated:

"The Legislature may make school boards liable for their torts or the torts of their agents and employees, and we know of no reason why it may not taken (sic) a middle course and empower them to protect by liability insurance persons injured by the negligence of their bus drivers and to provide that the liability of the insurer shall be determined by the final judgment obtained by the injured person." 167 S.W.2d at 701–02.

*"The act does not make the board liable for the torts of its agents and employees, but it does permit the board to be sued and a judgment to be obtained which, when final, shall measure the liability* of the insurance carrier to the injured party for whose benefit the insurance policy was issued." (Emphasis added) 167 S.W.2d at 702.

The School Board insurance statute, KRS 160.310, did not expressly waive government immunity. Likewise, there is nothing in the Board of Claims Act, KRS 44.070 *et seq.,* that states in so many words that the General Assembly intends by that Act to limited waiver of sovereign immunity.

Any differences between the statute in the *Taylor* case permitting a school board to purchase liability insurance and the statute in the present case, the "University of Kentucky Medical Center Malpractice Insurance" Act, KRS 164.939–.944, to establish a self-insurance fund are a distinction *without a difference.* Both statutes are permissive. Both statutes envision expenditure of public funds to establish a source for the payment of claims. Neither statute contains an *express* waiver of governmental immunity. Neither statute makes the Board liable for the torts of its agents or employees but both permit the Board to be sued and both permit payment from funds as limited by the statute if a judgment is obtained.

In a footnote to the *Frederick* case, the Court of Appeals alludes to claims made by the University's counsel *at oral argument* that such funds are used for payment of malpractice actions against the University of Kentucky Medical Center through the Board of Claims. The Board of Claims Act already provides the manner in which funds will be made available for the payment of claims, and needs no separate enabling legislation to provide funds for payment. See KRS 44.100. There is no reference in the "University of Medical Center Malpractice Insurance Act," KRS 164.939–164.944, to funding claims made through the Board of Claims. It would be an unnecessary statute.

■ The *Frederick* case cannot and does not overrule the *Taylor* case. We simply have two conflicting decisions on the same subject manner. Stare decisis leads us to follow the decision of the Supreme Court in *Taylor,* rather than that of the intermediate appellate court in *Frederick. Frederick* is overruled.

Respondent also cites *Moores v. Fayette County,* Ky., 418 S.W.2d 412 (1967) as supposedly overruling *Taylor.* Such is not the case. In *Moores,* no mention is made of *Taylor,* and for a very good reason: the fact situation is significantly different. *Moores* involves a claim against the county for negligent maintenance of the courthouse steps, resulting in personal injury to a claimant who fell on the steps. No statute authorized a fund for payment of such claims or the purchase of liability insurance from which such claims should be paid. No statute existed contemplating any waiver of sovereign immunity, partial or otherwise. It so happened that the county had bought liability insurance, as is often the case with governmental agencies, though none was required, perhaps against the possibility that the agency might be sued in some type of case in which the doctrine of sovereign immunity would not apply. This

type of liability insurance, which expressly provides that it is not a fund to pay claims until "the insured (the county) shall become legally obligated to pay," is common practice for governmental agencies. It costs very little, since it is cheap to sell insurance that pays no benefits. *Moores* has nothing to do with our situation because here the legislature has provided for a system for payment of claims against a state agency.

■ The respondent has argued that this legislation, the "University of Kentucky Medical Malpractice Insurance" Act, is arbitrary and discriminatory in violation of Section 59 of the Kentucky Constitution. This argument is unfounded. Cf. *Jefferson County Police Merit Board v. Bilyeu*, Ky., 634 S.W.2d 414 (1982). No other state institution has a large scale medical/hospital facility such that it might be similarly classified, except the University of Louisville, and the General Assembly has provided a parallel statute covering this institution—KRS 164.890–.895, the "University of Louisville Malpractice Insurance" Act.

Last, we consider whether the statute should be interpreted to provide a fund only for payment on claims against the doctors and nurses working for the University of Kentucky Medical Center, but not the hospital. This creates a problem because the legislature is only authorized to raise and spend public money for a public purpose (Ky. Const. Secs. 58 and 171). What legitimate public purpose is there if the state agency is not also liable? But, more importantly, such interpretation ignores the express language of the statute which specifies that this is a "fund to assure that health care malpractice claims or judgments against itself (the University Medical Center), *or* its agents, will be satisfied." How can we, as a court, selectively strike out the principal words and leave the ancillary words? It makes no sense to kill the dog and save the tail.

We conclude that the plain, unmistakable meaning of the statute is a partial waiver of governmental immunity for the hospital to the extent that this insurance fund has been provided for by the statute. We cannot obliterate or mutilate the statute.

Therefore, the decision of the Court of Appeals is reversed. The summary judgment in the trial court is set aside and the case is remanded to the trial court for proceedings consistent with this opinion.

STEPHENS, C.J., and GANT, LEIBSON and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which VANCE, J., joins.

VANCE, J., dissents by separate opinion in which STEPHENSON and WHITE, JJ., join.

STEPHENSON, Justice, dissenting.

The beginning of the majority opinion describes the basic proposition for the opinion by stating that sovereign immunity does not apply to this situation. With this statement I agree. Then the last paragraph of the opinion states that the statute here is a partial waiver of governmental immunity. With this I disagree. Somewhere between the beginning and the end of the opinion, the majority lost the way.

The fundamental flaw in the majority opinion is that it purports to rely on *Taylor* and then persists in treating the statute as a "limited waiver of sovereign immunity."

*Taylor* is an unusual case. If any inference can be drawn from *Taylor*, it is that the court was keenly aware of immunity and took pains to hold that it did not apply.

The quote from *Taylor* in the majority opinion states that the legislature could make school boards liable but that the statute took a middle course by providing a vehicle to protect injured persons by a liability policy. Then, the quote: "The act does not make the board liable...." Three times in *Taylor* it is emphasized that under the act the board is not liable and that "in no event can the judgment be collected out of school funds." All of this is language that plainly means that immunity is not involved at all. The court simply held that the board was a nominal party through

which the proceeds of the liability policy could be reached.

With this plain holding *Frederick* is not in conflict with *Taylor* and should not be overruled. *Frederick* simply held that the statute here did not waive sovereign immunity.

Section 231 of the Kentucky Constitution provides that the General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth.

The statute in *Taylor* and the statute here do not direct in what manner and in what courts suits may be brought. Hence, it is clear the legislature had no intention of waiving immunity. The majority opinion states that from the words of the statute a limited waiver is plain. What the opinion really says is that there is an implied waiver. The Constitution sets out the method of waiver which does not appear in either of the statutes. The concept of an implied waiver is in conflict with Section 231.

This leads into the strange statement that the Board of Claims Act is an implied waiver. This act specifically follows the Constitution by setting out the amount and type of claims and a forum where the claims may be heard. This is an express waiver to the extent provided, and I submit that there is no precedent in our jurisprudence for a *limited* or *implied* waiver.

The majority opinion should follow the plain holding of *Taylor* or acknowledge that it does not.

Accordingly, I dissent.

VANCE, J., joins in this dissent.

VANCE, Justice, dissenting.

In my view the doctrine of sovereign immunity bars any recovery by the movant from the University of Kentucky Student Health Services Clinic.

It is not questioned that the University of Kentucky comes within the classification of a state governmental unit. Section 231 of our Constitution provides that the General Assembly may, by law, direct in what

manner and in what courts suits may be brought against the Commonwealth.

As the majority opinion concedes, this section of the Constitution has uniformly been held to grant the Commonwealth immunity from liability unless the immunity is waived by the General Assembly. Immunity is waived when the General Assembly directs the manner and the forum in which suit may be brought. Kentucky Constitution, § 231.

There is absolutely no precedent for a limited waiver, a partial waiver, or a waiver of immunity by implication. The Board of Claims Act, cited by the majority as example of limited waiver, is not such because the act expressly directs the manner and the forum in which claims may be litigated against the Commonwealth.

The majority also cites *Taylor v. Knox County Board of Education*, 292 Ky. 767, 167 S.W.2d 700 (1942) as another example of limited waiver of immunity. In fact, however, *Taylor* expressly held that the act construed did not waive immunity at all, impliedly or otherwise. It specifically held that the Board of Education could not be held liable for damages. The decision in *Taylor, supra,* does offer movant some relief if his case can be fitted within the circumstances outlined therein. That relief is not because of any implied or limited waiver of immunity, however, but because, without any waiver of immunity, *Taylor* permitted suit against a school board as a nominal party only for the purpose of determining the extent of the liability, not of the school board, but of its insurance carrier, which of course had no immunity whatever.

The majority holds that an act of the General Assembly which does not direct the manner nor the forum in which actions against the Commonwealth may be brought may nevertheless be held to constitute an implied or limited waiver of governmental immunity. This undermines a doctrine of long standing and may eventually lead to abolition of the doctrine by judicial fiat. It is not within our province as a court to amend the Constitution. *Frederick v.*

*University of Kentucky Medical Center,* Ky.App., 596 S.W.2d 30 (1979) holds that governmental immunity cannot be waived by implication. I would not overrule *Frederick.*

I would also hold that K.R.S. 164.939–944 violates § 59 and § 60 of our constitution.

The Constitutional Debates teach us that the delegates to the Constitutional Convention which adopted the present Kentucky Constitution, were greatly concerned with the propensity of the General Assembly to enact special and local laws. To prohibit this practice, the framers of our constitution, in § 59 and § 60, provided that the General Assembly shall not pass any local or special acts in any case where a general law may be made applicable and that the General Assembly shall not intentionally enact any local or special act by the repeal in part of a general act.

It has been recognized that peculiar circumstances relating to a particular class of persons may justify the enactment of laws applicable to members of that class only. In such.cases, however, the law must apply equally to all members of the class so designated, and the classification itself must be reasonably justified by the pattern of circumstances peculiar to the class. The classification may not be artificially drawn to include some person to whom the particular circumstances apply but exclude others to whom they likewise apply. When unique circumstances justify the creation of a special classification, the classification must be general in the sense that it includes all to whom the unique circumstances apply. *Mannini v. McFarland,* 294 Ky. 837, 172 S.W.2d 631 (1943); *Board of Education of Jefferson County v. Board of Education,* Ky., 472 S.W.2d 496 (1971).

In this state there are seven universities. All of them provide some medical services to students and maintain a staff for that purpose. I see no valid reason for a classification which permits the University of Kentucky to maintain a fund to protect itself and its agents from malpractice claims arising from negligence in administering health care while denying such protection to Murray State University, Morehead State University, Western State University, Eastern State University, and Kentucky State University. On the other hand, I see no valid reason for a classification which would permit a student at the University of Kentucky to recover damages for an injury arising from medical malpractice at the university clinic, yet denying recovery to such a student at other universities who may be injured by similar malpractice. The majority opinion states only that the classification is justified upon the ground that the University of Kentucky and the University of Louisville have large scale hospital facilities. It is not clear from the record, however, that the movant was hospitalized or that his treatment was generally associated with hospital care in any way.

It seems to me that this is local or special legislation which addresses a situation at two Kentucky state universities but fails to address a similar situation at all of the other state universities.

STEPHENSON and WHITE, JJ., join in this dissent.