Cynthia REYES, Appellant,

v.

HARDIN COUNTY d/b/a Hardin Memorial Hospital and Hardin County Fiscal Court d/b/a Hardin Memorial Hospital, Appellees.

No. 1999–SC–0887–DG.

Supreme Court of Kentucky.

Aug. 23, 2001.

Rehearing Denied Oct. 17, 2001.

H. Philip Grossman, Michael R. Mazzoli, Fernandez, Friedman, Grossman & Kohn, Louisville, for appellant.

John R. Grise, Laura M. Hagan, Shawn Rosso Alcott, Kerrick, Grise & Stivers, Bowling Green, Ken M. Howard, Hardin County Attorney, Elizabethtown, for appellees.

COOPER, Justice.

Hardin Memorial Hospital is owned and operated by Hardin County, Kentucky, and the elected members of the Hardin Fiscal Court serve as its board of directors. Appellant Cynthia Reyes brought this action in the Hardin Circuit Court claiming that while a patient at the hospital in January 1995, she was injured when a hospital employee negligently inserted an intravenous needle into her hand. The Hardin Circuit Court dismissed the action as barred by sovereign immunity. The Court of Appeals affirmed and we granted discretionary review. The only issue before us is whether KRS 67.186(3) permits a suit to be brought against a county hospital for the sole purpose of measuring a negligence claimant's entitlement to proceeds from the hospital's policy of liability

insurance.[1]  We find that it does and, thus, reverse and remand to the Hardin Circuit Court for further proceedings.

■  KRS 67.186 provides:

(1) The fiscal court of any county in which there is a county operated hospital may provide for liability and indemnity insurance for the benefit of the hospital against the negligence of the employees of such hospital.

(2) The insurance policies so purchased by the fiscal court shall be purchased only from insurance companies authorized to transact business in this state, and any such policy shall bind the insurer to pay, subject to the terms and conditions of the policy, any final judgment, not in excess of the policy limits, rendered against the insured hospital or hospital employees for the death or injury of any patient, or damage to the property of any patient, resulting from the negligence of the hospital, its agents or employees.

(3) This section shall not be construed as waiving the immunity of the county or county operated hospital from suit only to the extent of the policy limits, and no judgment may be enforced or collected against the county, fiscal court, the members thereof, or such hospital, but shall only measure the liability of the insurance carrier.  No attempt shall be made in the trial of any suit to suggest the existence of any insurance which covers in whole or in part any judgment or award which has been rendered in favor of the claimant, but if the verdict rendered by the jury exceeds the limits of applicable insurance, the court shall reduce the amount of said judgment to a sum equal to the applicable limit stated in the policy.

At the time of Reyes's claimed injury, Hardin Memorial Hospital was insured by an insurance agreement with the Kentucky Hospital Association Trust with limits of $1,000,000 per claim and an aggregate annual limit of $3,000,000.[2]  The Hardin Fiscal Court paid an annual premium (referred to in the policy as a "contribution") of $460,340 for this coverage.

The concept of sovereign immunity arose from the common law of England and was recognized as an accepted principle of law early in our nation's history. *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793).  Its existence was first recognized by our predecessor Court without question or citation to authority in *Divine v. Harvie*, 23 Ky. (7 T.B. Mon.) 439 (1828): "It seems to be conceded on all hands, that the State can not be made a party defendant, and is not suable in her own courts." *Id.* at 441.  The words "sovereign immunity" are not found in our Constitution.  However, Section 230 provides that "[n]o money shall be drawn from the State Treasury, except in pursuance of appropriations made by law ...;" and Section 231 provides that "[t]he General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Virtually identical provisions were contained in the Constitutions of 1792 (Article VIII, §§ 3, 4), 1799 (Article VI, §§ 5, 6), and

---

**1.** Appellant argued alternatively to the Court of Appeals that Hardin Memorial Hospital is not an immune entity under *Kentucky Center for the Arts Corp. v. Berns*, Ky., 801 S.W.2d 327 (1990).  She has since abandoned that argument and, thus, we do not address it.

**2.** Attached to the policy is an "umbrella agreement" providing extended coverage up to $10,000,000.  However, the policy period for this agreement is stated as July 1, 1994 to January 1, 1995.  Presumably, the umbrella coverage expired prior to Reyes's injury.

1850 (Article VIII, §§ 5, 6). Although some cases suggest that Sections 230 and 231 are the source of sovereign immunity in Kentucky, *e.g., Bach v. Bach,* Ky., 288 S.W.2d 52, 54 (1956), those sections are more accurately viewed as delegating to the General Assembly the authority to waive the Commonwealth's inherent immunity by direct appropriation of money from the state treasury and/or by specifying where and in what manner the Commonwealth may be sued. Of course, the most significant waiver of immunity to date was the enactment of the Board of Claims Act by the 1946 General Assembly and its substantial amendment to its present-day form by the 1950 General Assembly. KRS 44.070, *et seq.* (formerly KRS 176.290, *et seq.*) (1946 Ky.Acts, ch. 189, §§ 1, 3, par. 1; 1950 Ky.Acts, ch. 50, § 1).

This is our first occasion to specifically construe KRS 67.186, though we did state in *dicta* in *Rather v. Allen County War Memorial Hospital,* Ky., 429 S.W.2d 860, 862 (1968), that the statute "creates an exception to immunity," and in *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407, 409 (1967), that it "authorize[s] relief against the negligence of county employees in the operation of ... hospitals." The Hardin Circuit Court and the Court of Appeals both held that Reyes's suit was precluded by our more recent decisions in *Withers v. University of Kentucky,* Ky., 939 S.W.2d 340 (1997) and *Franklin County v. Malone,* Ky., 957 S.W.2d 195 (1997).

In *Withers,* we considered the effect of the 1986 enactments of KRS 44.072 and KRS 44.073 on the so-called *Taylor*-line of cases that had held that the purchase of liability insurance by an otherwise immune governmental entity, pursuant to a statute authorizing or requiring such purchase, effected a partial waiver of sovereign immunity to the extent of the limits of the available insurance. *See Bd. of Educ. v.*

*Kirby,* Ky., 926 S.W.2d 455 (1996), construing KRS 160.160(1) ("It may ... expend funds necessary for liability insurance premiums."), and KRS 160.310 ("Each board of education may set aside funds to provide for liability and indemnity insurance."); *Green River Dist. Health Dep't v. Wigginton,* Ky., 764 S.W.2d 475 (1989), construing KRS 212.890(4) ("County, city-county, and district health departments may ... [p]rocure liability insurance."); *Kestler v. Transit Auth. of Northern Kentucky,* Ky., 758 S.W.2d 38 (1988), construing KRS 96A.180 ("An authority shall provide insurance ... for public liability [or] may provide for self-insurance."); *Dunlap v. University of Kentucky Student Health Servs. Clinic,* Ky., 716 S.W.2d 219 (1986), construing KRS 164.939 ("[T]he University of Kentucky [is authorized to] establish from its own funds other than general tax revenues a basic coverage compensation fund."); *Taylor v. Knox County Bd. of Educ.,* 292 Ky. 767, 167 S.W.2d 700 (1942), also construing KRS 160.310, *supra.* In *Withers v. University of Kentucky, supra,* we were again construing KRS 164.939. In *Franklin County v. Malone, supra,* we were construing KRS 65.150(1) ("A county or city or urban-county government ... may expend funds necessary to insure any of its employees, officials and property against any liability or property damage."). In all of the cited cases, the applicable statute either authorized or required an immune entity to purchase a policy of liability insurance. However, none of those statutes contained an express provision permitting suit to be filed against the otherwise immune entity.

KRS 44.072 and KRS 44.073(14) provide, *inter alia:*

> The Board of Claims shall have exclusive jurisdiction to hear claims for damages, *except as otherwise specifically set forth by statute,* against the Common-

wealth, its cabinets, its departments, bureaus, agencies ... (Emphasis added.)
...

The ... purchase of liability insurance or the establishment of a fund for self-insurance by the Commonwealth, its cabinets, departments, bureaus, or agencies ... shall not be construed as a waiver of sovereign immunity or any other immunity or privilege thereby held.

*Withers, supra,* held that the language of these two statutes precluded a finding of waiver from the mere purchase of liability insurance pursuant to a statute authorizing or requiring such purchase by an immune entity, but containing no express waiver of immunity, and thereby abrogated those cases holding otherwise. *Id.* at 346.

We will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."

*Id.* (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) and *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Thus, if KRS 67.186 consisted only of subsections (1) and (2), KRS 44.073(14) and *Withers* would preclude Reyes from bringing this action. However, the "overwhelming implication[ ]" of the text of KRS 67.186(3) "leave[s] no room for any other reasonable construction" than that suit may be brought against the hospital and a judgment obtained that is solely enforceable against the hospital's liability insurance carrier.

Upon first reading, KRS 67.186(3) seems self-contradictory. While the first clause of the first sentence of the provision purports to disclaim *any* waiver of immunity, the remainder of the provision describes in detail how and for what purpose suit may

be brought against an insured county hospital. The second clause of the first sentence provides that a judgment "shall only measure the liability of the insurance carrier;" and the second sentence refers to "the trial of any suit," a "verdict rendered by the jury," a "judgment ... rendered in favor of the claimant," and a reduction of the "judgment" to a sum equal to the applicable limit stated in the policy. This language could not have been intended to authorize a direct action against the liability insurer, for the statute specifically precludes any "attempt ... in the trial of any suit to suggest the existence of any insurance." To understand this seeming contradiction, KRS 67.186(3) must be viewed in the context in which it was enacted in 1960.

In 1940, the General Assembly enacted what is now compiled in the revised statutes as KRS 160.310. The statute provided substantially as it does now:

Each board of education may set aside funds to provide for liability and indemnity insurance against the negligence of the drivers or operators of school buses owned or operated by the board. If the transportation of pupils is let out under contract, the contract shall require the contractor to carry indemnity or liability insurance against negligence in such amount as the board designates. In either case, the indemnity bond or insurance policy ... shall bind the company to pay any final judgment rendered against the insured for loss or damage to property of any school child or death or injury of any school child or other person.

1940 Ky.Acts, Ch. 65. The act also contained an emergency clause stating that "there is a vital need to properly protect the school children of the state in going to and returning from school." *Id.* In *Taylor v. Knox County Board of Education, su-*

*pra*, our predecessor Court construed the statute so as to preserve the inherent immunity of a county board of education while still giving effect to the purpose of its policy of liability insurance.

> The act does not make the board liable for the torts of its agents and employees, but it does permit the board to be sued and a judgment to be obtained which, when final, shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued.

169 S.W.2d at 702. The Court also addressed the illogic of authorizing the purchase of a liability insurance policy for the benefit of injured parties, including school children, then permitting the insurance carrier to employ the board of education's status as an immune entity to shield the policy from any claims made against its proceeds.

> After a judgment has been obtained, the insurer occupies the same relation to the injured party as though the insured had been insolvent and a return of "no property found" had been made. Certainly, when the insurance company issued the policy it intended really to insure and not to have the board of education pay the premium out of public funds for nothing and make the policy a virtual fraud.

*Id.*

Despite the unarguable logic of this reasoning, the fact remains that KRS 160.310 does not expressly authorize a suit against a board of education. *Taylor* was rendered in 1942. In 1944, the General Assembly amended KRS 67.180, which authorizes counties to purchase motor vehicle liability and workers' compensation insurance, to add a new subsection (2) that provides:

> Suits instituted on such policies may be maintained against the county only for the purpose of obtaining a judgment which when final shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued, but not to be enforced or collectible against the county or fiscal court or the members thereof.

1944 Ky.Acts, ch. 49, § 1. This amendment codified the holding in *Taylor, supra,* 167 S.W.2d at 702, and expressly authorized suits against counties having insurance coverage for motor vehicle accidents and workers' compensation claims. Accordingly, it was held in *Monroe County v. Rouse,* Ky., 274 S.W.2d 477, 479 (1954), that the enactment of KRS 67.180(2) represented a modification of the common law rule of immunity by authorizing a suit against a county for damages arising out of an automobile accident for the sole purpose of measuring the liability of the county's automobile liability insurer.

In *Ginter v. Montgomery County,* Ky., 327 S.W.2d 98 (1959), the county had *not* purchased the insurance authorized by KRS 67.180(1). Although not clearly articulated in the opinion, it appears that the claimant's theory in *Ginter* was that the enactment of KRS 67.180(2) was an absolute waiver of immunity and that the language with respect to a judgment being the "measure of the liability of the insurance carrier" applied only if there was, in fact, an insurance carrier; *ergo,* since there was no insurance carrier, the county was required to pay the judgment. That theory was rejected.

> This argument is without merit, because subsection (2) of KRS 67.180 clearly recognizes the immunity doctrine in providing that a suit on such a policy is maintainable against the county only for the purpose of obtaining a judgment which shall measure the liability of the insurance carrier, and shall not be enforced

or collectible against the county or the fiscal court. We call attention also to KRS 44.055, enacted in 1958, which authorizes state agencies to procure motor vehicle liability insurance, but provides that "Nothing contained herein shall be construed to be a waiver of sovereign immunity."

*Id.* at 100.

KRS 67.186(1) and (2) were enacted in 1956 (1956 Ky.Acts, ch. 156), prior to the enactment of the 1958 version of KRS 44.055 and prior to the 1959 opinion rendered in *Ginter.* Subsection (3) was added to KRS 67.186 in 1960 (1960 Ky.Acts, ch. 192), after the enactment of KRS 44.045 and after the rendition of *Ginter.* Thus, it probably is no coincidence that the first clause of KRS 67.186(3) is virtually identical in context to the language in then KRS 44.055 that had been quoted in *Ginter* for the proposition that a statute codifying the holding in *Taylor, supra,* did not constitute an absolute waiver of sovereign immunity.

Viewed in the context of these immediately preceding events, it seems obvious that the first clause of KRS 67.186(3) was intended to codify the holding in *Ginter* so that the remaining provisions, which codify the holding in *Taylor,* would not be construed as authorizing a suit against an uninsured county. To construe the first clause as precluding a suit against a county for the purpose of measuring the liability of its insurance carrier would render the entire subsection meaningless. There is no need for a statute that *precludes* a suit against an immune entity, for such is inherent in the doctrine of sovereign immunity. *Divine v. Harvie, supra,* at 441. A statute is required only if the legislature intends to *permit* such a suit. Ky. Const. § 231. "The universal rule is, that in construing statutes it must be presumed that the Legislature intended *something* by what it attempted to do...." *Grieb v. Na-*

*tional Bond & Inv. Co.,* 264 Ky. 289, 94 S.W.2d 612, 617 (1936) (emphasis added). "All statutes are presumed to be enacted for the furtherance of a purpose on the part of the legislature and should be construed so as to accomplish that end rather than to render them nugatory." *Commonwealth ex rel. Martin v. Tom Moore Distillery Co.,* 287 Ky. 125, 152 S.W.2d 962, 967 (1939).

Per *Withers, supra* at 346, the "overwhelming implication[ ] from the text" of KRS 67.186(3) is that the General Assembly intended to codify *Taylor, supra,* with respect to suits against county hospitals. This legislative codification of *Taylor* is an express, though limited, waiver of immunity, thus does not implicate KRS 44.073(14), *Withers,* or *Franklin County v. Malone, supra.*

Appellees secondarily assert that the purpose of KRS 67.186 is to provide insurance coverage not for the hospital, itself, but for the employees of the hospital. If this argument had merit, the insurance trust would escape liability, since Reyes did not sue any hospital employees and the period of limitation for doing so has long since expired. KRS 413.140(1)(a). However, the argument is defeated by the very language of both the statute and the insurance agreement. KRS 67.186(1) recites that the insurance authorized thereby is "for the benefit of the hospital against the negligence of the employees of such hospital." Subsection (2) refers to coverage for any final judgment "rendered against the insured hospital or hospital employees." Part I of the insurance agreement provides that "[t]he trust will pay on behalf of each member all sums which the member shall become legally obligated to pay." Part VI, paragraph L defines a "member" as, *inter alia,* "any entity named in Section I of the Declarations section." The only entity named in Section I of the Declara-

tions section of the agreement is Hardin Memorial Hospital.

█ Finally, Appellees argue that since KRS 67.186(3) does not specify "in what courts" suits against county hospitals may be brought, per Ky. Const. § 231, this suit must be brought in the Board of Claims, per KRS 44.072. If this argument had merit, Reyes's potential recovery would be effectively reduced from $1,000,000 to $100,000, the maximum award the Board of Claims is authorized to render. KRS 44.070(5). And the insurance trust's potential liability would be reduced from $1,000,000 to zero since awards made by the Board of Claims are paid from the state treasury. KRS 44.100. Regardless, KRS 67.186(3) refers to a "verdict rendered by the jury;" and jury verdicts are not rendered by the Board of Claims. The statute also requires "the court" to reduce the amount of an excess judgment to the applicable limit stated in the policy; and the Board of Claims is not a "court." Thus, by "overwhelming implication[ ]," *Withers, supra,* at 346, there is no other reasonable interpretation but that the General Assembly intended that a suit authorized by KRS 67.186(3) be brought not in the Board of Claims, but in either the circuit court or the district court depending on the amount in controversy.[3] KRS 23A.010(1); KRS 24A.120(1)(a).

Accordingly, the decision of the Court of Appeals is reversed and this action is remanded to the Hardin Circuit Court for further proceedings consistent with this opinion.

All concur.

---

**3.** This conclusion obviates any need to address here whether the Board of Claims has jurisdiction to hear and resolve claims against counties. Ky. Const. § 176; KRS 44.071.