RENDERED: JULY 8, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0985-MR

WILLIAM N. TIPTON AND
JOANN K. TIPTON                                                APPELLANTS

|          |                                      |
|----------|--------------------------------------|
|          | APPEAL FROM FAYETTE CIRCUIT COURT    |
| v.       | HONORABLE JULIE M. GOODMAN, JUDGE    |
|          | ACTION NO. 20-CI-02904               |

ST. JOSEPH HEALTH SYSTEM, INC.;
CHI NATIONAL HOME CARE, INC.;
SCOTT LESLIE; TONJA LITTLE; AND
COMMONWEALTH OF KENTUCKY
EX REL. DANIEL CAMERON,
ATTORNEY GENERAL                                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND GOODWINE, JUDGES.

GOODWINE, JUDGE:  William and Joann Tipton appeal an August 5, 2021 order

of the Fayette Circuit Court summarily dismissing various civil claims they

asserted against the St. Joseph Health System, Inc., CHI National Home Care, Scott Leslie, and Tonja Little (collectively the appellees). Upon review, we affirm.

The relevant background of this appeal is as follows. On September 29, 2020, the Tiptons filed suit in Fayette Circuit Court against St. Joseph Health System, Inc.; and by March 9, 2021, they had amended their complaint to add, as defendants, home-health service provider CHI National Home Care, Inc.; and two of its employees, physical therapist Scott Leslie and licensed practical nurse Tonja Little. The claims the Tiptons asserted against these individuals were "breach of warranty," "breach of contract," "negligence," "negligent supervision and entrustment," "estoppel," "strict liability," and an alleged violation of Kentucky's Consumer Protection Act, Kentucky Revised Statutes (KRS) 367.170 *et seq*. Despite the different labels given to their claims, however, each of their claims were of the same *type*.

To explain, each of the Tiptons' claims sought to hold Leslie and Little directly liable for damages – and St. Joseph and CHI National (Leslie's and Little's ostensible employers or principals) indirectly liable – based upon the same set of operative facts: as their complaint alleged, (1) Leslie provided "physical therapy care in the Tiptons' home" on July 15, 2020, and Little "provided nursing care in the Tiptons' home" on July 20, 2020 – dates that occurred after the

COVID-19 emergency was declared in the Commonwealth,[1] but before the declaration expired; (2) when they cared for the Tiptons, Leslie and Little were positive for and therefore exposed the Tiptons to the COVID-19 virus; and (3) due to the exposure, the Tiptons contracted the virus. Because each of their asserted claims sought to hold the appellees liable for their resulting harm, what the Tiptons asserted against the appellees was, undisputedly, an array of what KRS 39A.275 deems "COVID-19 claims." *See* KRS 39A.275(1)(a), (b), and (c).

That said, the appellees were each, undisputedly, "businesses and service providers" engaged at all relevant times in the provision of "home-based care and services" and "health care." *See* KRS 39A.275(9)(a)6. and (b). Accordingly, the appellees were what KRS 39A.275 deems "essential service providers," and each was entitled to be "considered an agent of the Commonwealth of Kentucky for the limited purpose of providing essential services arising from COVID-19[,]" per KRS 39A.275(9). The operative effect of KRS 39A.275 therefore rendered the appellees immune to any "COVID-19 claim[s]" not stemming from "gross negligence, or wanton, willful, malicious, or intentional misconduct." *See* KRS 39A.275(8)(a) and (b); KRS 39A.275(9).

---

[1] The declaration of emergency in Kentucky relating to the COVID-19 pandemic occurred on March 6, 2020.

As such, pursuant to KRS 39A.275, the appellees ultimately moved for summary dismissal of the Tiptons' claims. Responding, the Tiptons offered several arguments in opposition that are addressed more fully below. Notwithstanding, the circuit court granted the appellees' motions. This appeal followed.

We now proceed to our analysis. In its dispositive order of August 5, 2021, the circuit court determined that the health care services provided by the appellees – the focus of the Tiptons' claims – were discretionary functions, *i.e.*, carried out "in the face of a pandemic" and thus "in a legally uncertain environment." It also determined KRS 39A.275 provided at least a form of qualified official immunity to each of the appellees with respect to the Tiptons' COVID-19 claims. And indeed, by exempting "essential service providers" from liability for any such claims that do *not* involve "gross negligence, or wanton, willful, malicious, or intentional misconduct[,]"[2] that is precisely the thrust of the statute. To explain,

> [W]hen an officer or employee of the state or county (or one of its agencies) is sued in his or her individual capacity, that officer or employee enjoys qualified official immunity, which affords protection from damages liability for good faith judgment calls *made in a legally uncertain environment*.

---

[2] *See* KRS 39A.275(8)(b).

-4-

*Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (internal quotation marks and citations omitted). However, the defense of qualified official immunity has no application to torts such as gross negligence, which involve malice or willful misconduct,[3] because:

> Acting with malice and acting in good faith are mutually exclusive. . . . it is also a fact that defeats the defendant's assertion of qualified official immunity. Official immunity is unavailable to public officers who acted *with the malicious intention* to cause a deprivation of constitutional rights or other injury[.]

*Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016) (internal quotation marks and citations omitted).

To be clear, the Tiptons do not take issue with any of these points. Rather, their contentions on appeal are limited to the following: (1) KRS 39A.275 is unconstitutional because it is "special legislation;" (2) KRS 39A.275 is unconstitutional because it violates the "jural rights doctrine;" and (3) summary judgment was improper because, as they assert in their brief, "discovery is still necessary to determine whether CHI, St. Joseph, and their employees, including Defendants/Appellees Scott Leslie, and Tonja Little were grossly negligent."

---

[3] "Gross negligence" is defined "as being something more than the failure to exercise slight care. We have stated that there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious of willful." *Cooper v. Barth*, 464 S.W.2d 233, 234 (Ky. 1971) (citations omitted).

-5-

With respect to their first argument, we disagree. The Tiptons argue, in sum, that KRS 39A.275 qualifies as "special legislation" because section (9) of the statute, which delineates the "essential services" to which immunity is extended, applies to some types of businesses, but not others. Their argument misunderstands the law. The appropriate test for determining whether a statute qualifies as "special legislation" within the meaning of Sections 59 and 60 of the Kentucky Constitution "is whether the statute applies to a particular individual, object or locale." *Calloway Cty. Sheriff's Dep't v. Woodall*, 607 S.W.3d 557, 573 (Ky. 2020). Simply put, KRS 39A.275 is not "special legislation" because it does not relate to a *particular* individual, object, or locale. Rather, it applies statewide to industries and types of businesses identified as essential-service providers, and it applies equally to each business or individual within those industries and types of businesses.[4]

With respect to their second argument, we likewise disagree that KRS 39A.275 violates the jural rights doctrine. We quote the circuit court and adopt its analysis as follows:

---

[4] The Tiptons' assertion that KRS 39A.275 impermissibly differentiates between *types* of businesses takes issue with *classification*, which could have been the subject of an equal protection argument under Sections 1, 2, and 3 of the Kentucky Constitution. *See Woodall*, 607 S.W.3d at 573. However, the Tiptons never raised any such argument below or in their brief before this Court, and it is not our prerogative to address that issue, as our review is limited to issues specifically raised before the circuit court. *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

The basic premise of the jural rights doctrine is that Sections 14, 54, and 241 of the Kentucky Constitution, when read together, preclude any legislation that impairs a right of action that was recognized at common law prior to the adoption of the 1891 Kentucky Constitution. *E.g.*, *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 800 (Ky. 2009). However, sovereign immunity, under Section 231 of Kentucky's Constitution, prohibits suits against the Commonwealth and its agents, absent its explicit consent. Ky. Const. § 231.[FN]

> [FN] The doctrine was first recognized in Kentucky's courts in 1828 "without question or citation to authority" in *Divine v. Harvie*[,] 23 Ky. (7 T.B. Mon.) 439 (Ky. 1828), *Reyes v. Hardin County*, 55 S.W.3d 337, 338 (Ky. 2001).

The doctrine "is a bedrock component of the American governmental ideal[,] is a holdover from the earliest days of the Commonwealth," and "has been included in all four of the Commonwealth's constitutions *and predates each*." *Id.* at 799 (emphasis added; citing *Ky. Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 329 (Ky. 1990)). "[S]overeign immunity is older than this Commonwealth's Constitution," and the jural rights doctrine "does not trump" sovereign immunity because the Commonwealth had the power to immunize its agents from suit prior to ratification of the 1891 Kentucky Constitution. *Garrison v. Leahy-Auer*, 220 S.W.3d 693, 698 (Ky. App. 2006).

The legislature can enact law that extends sovereign immunity to the private sector without running afoul of the jural rights doctrine, when an essential governmental function is at issue and especially to protect the public health and safety of the Commonwealth's people under a police power. *E.g.*, *Caneyville*, 286 S.W.3d at 799-806. The jural rights

issue objection raised by the Tiptons has already been addressed and resolved by the Kentucky Supreme Court in 2009 in *Caneyville*.  There, the court upheld the extension of state sovereign – governmental, in that case – immunity under KRS 75.070 to a local volunteer fire department.  *Id*[.]  The statute read, in part, that when answering a call for a fire, all "volunteer fire department [sic] and the personnel of each . . . shall be considered an agent of the Commonwealth of Kentucky and acting solely in a governmental capacity [and] shall not be liable in damages for any omission or act of commission or negligence while answering an alarm . . . ."  *Id*. at 795-96 (quoting Ky. Rev. Stat. Ann. § 75.070).

The plaintiff, an owner of a motorcycle business, argued that KRS 75.070 was unconstitutional because it violated the jural rights doctrine and wrongly barred his lawsuit for common-law negligence against the volunteer fire department and its personnel.  *Id*. at 794-97.  The court framed the issue as whether the legislature "has the right, through the enactment of legislation, to confer immunity on . . . volunteer fire departments, or whether jural rights preclude this grant of immunity as constitutional."  *Id*. at 797.  The court reasoned that "fire departments perform a paradigmatic function of the government in keeping the public safe from fire[.]" *Id*. at 799.

As to the motorcycle shop owner's jural rights argument, the court reasoned,

> The reigning authority on the matter holds that sovereign immunity (as embodied in Ky. Const. § 231) *will trump jural rights* (Ky. Const. §§ 14, 54[,] 241) *because it is a specific provision of the Constitution*, rather than a general provision. . . .  Thus, the crucial determination in sovereign immunity analysis boils down to:  whether the entity being sued is the sovereign, its agency, or

-8-

one who goes about the business of conducting the sovereign's work. Therefore, if [the volunteer fire department here] was an agent of the Commonwealth, engaged in the Commonwealth's work, KRS 75.070 is constitutional.

*Id*. at 801-02 (emphasis added). The court then reasoned that governmental immunity would extend to an agency of the Commonwealth when the agent performs "an essential government function." *Id*. at 804. Fire departments were then determined to "engage in an essential governmental function in providing for the safety and well-being" of the Commonwealth's citizens. *Id*. at 805. "Significantly," the Kentucky Supreme Court further reasoned that KRS 75.070 expressly characterized "volunteer fire departments as 'an agent of the Commonwealth'" that acts "in a governmental capacity." *Id*. (quoting statute). The court held that KRS 75.070 was constitutional, did not offend the jural rights doctrine, conferred immunity to the volunteer fire department and its personnel, and thus, precluded a suit for damages. *Id*. at 807.[FN]

> [FN] Other Kentucky opinions have held that statutes conferring a form of sovereign immunity – governmental or qualified official – upon universities and physicians from reporting suspected child abuse were constitutional, satisfied an integral government function pertaining to public welfare, did not violate the jural rights doctrine, and precluded lawsuits for negligence. *E.g.*, *Garrison*, 220 S.W.3d at 697-700 (construing KRS 620.050); *Hazlett v. Evans*, 943 F. Supp. 785, 787-89 (E.D. Ky. 1996) (same). Also, statutes originally enacted in 1998 that were already within the Statewide Emergency Management Programs Act at KRS chapter 39A – and

never challenged as violative of Section 59 or jural rights – grant power to the governor to authorize the use of "the private sector" to act as agents of the Commonwealth during "any part of the response phase or emergency[,]" Ky. Rev. Stat. Ann. § 39A.270(2), and also immunize private-sector "agents or representatives of the state" from claims of "personal injury or property damage[,]" Ky. Rev. Stat. Ann. § 39A.280(2).

Here, the Defendants are immune from suit because at the time of treating the Tiptons they were agents of the Commonwealth assisting same as essential service providers and providing an essential government function requiring discretionary action in order to protect the public's health. *See Caneyville*, 286 S.W.3d at 804, 808; [KRS 39A.275; internal footnote omitted]. Health care providers, health facilities, and home-based care and services are all deemed essential service providers carrying out the important governmental police power of public health under the statute. [KRS 39A.275(9)(a)6. and (b).] The Tiptons' claims all arise from COVID-19. The Defendants are "deemed essential service providers and shall be considered an agent of the Commonwealth of Kentucky for the limited purpose of providing essential services arising from COVID-19." [KRS 39A.275(9)]. As an agent of the Commonwealth, the Defendants "shall not be liable for any COVID-19 claim," absent ["gross negligence, or wanton, willful, malicious, or intentional misconduct." *See* KRS 39A.275(8)(b).]

Lastly, the Tiptons argue summary judgment was improper because "discovery is still necessary to determine whether CHI, St. Joseph, and their employees, including Defendants/Appellees Scott Leslie, and Tonja Little were

-10-

grossly negligent."[5]  As this tends to indicate, the Tiptons are not asserting that they presented any evidence of gross negligence capable of withstanding summary judgment.  *See* Kentucky Rule of Civil Procedure (CR) 56.  Indeed, they cite no such evidence.  Instead, the crux of their argument is that they would like more time to gather more evidence in support of their claims.

However, "[t]he trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion." *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).  Here, absent from the Tiptons' argument is any contention that the circuit court abused its discretion in this regard.  Furthermore, no such abuse is apparent from the record.  Questions of immunity should be addressed promptly at the outset of a suit, considering that immunity is not just

---

[5] As an aside, the circuit court disposed of the Tiptons' "gross negligence" claims in two separate ways.  First, it concluded its order by stating, "The Tiptons have not alleged gross negligence in their Second Amended Complaint."  Second, in disposing of the Tiptons' claims based upon the qualified immunity granted by KRS 39A.275, the circuit court effectively determined the record only sustained that the appellees acted in good faith – which would run contrary to any assertion of malice or gross negligence. *See Martin*, 507 S.W.3d at 5; *see also Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001) (explaining it is the plaintiff's burden, for purposes of defeating a claim of qualified immunity, to adduce evidence that good faith was lacking); *see also Furlow v. Sturgeon*, 436 S.W.2d 485, 486 (Ky. 1968) (citation omitted) (explaining "effect must be given to that which is unavoidably and necessarily implied in a judgment, as well as that which is expressed in the most appropriate language," and that where claims in an action are mutually exclusive, "adjudicating in favor of one is negating the other").  On appeal, the Tiptons argue the circuit court misconstrued their complaint as not asserting a "gross negligence" claim and assert error in this regard.  However, it is unnecessary to address this point; as discussed, the circuit court properly utilized CR 56 to dismiss any "gross negligence" claims the Tiptons may have raised.

immunity from an eventual adverse judgment but from the ordeal of being a party to a suit at all. As the appellees note, the Tiptons initiated their suit on September 29, 2020, and summary judgment was entered on August 5, 2021 – nearly a year later. "There is no requirement that discovery be completed, only that the non-moving party have 'had an opportunity to do so.'" *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. App. 2013) (citation omitted). Moreover, a period of six months for discovery has been deemed an appropriate opportunity to do so. *See Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628 (Ky. App. 1979).

In conclusion, we have addressed the breadth of the Tiptons' arguments and have found no reversible error. We therefore AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Andre F. Regard
Lexington, Kentucky

BRIEF FOR APPELLEES:

B. Todd Thompson
Chad O. Propst
Abbie C. O'Brien
Louisville, Kentucky

BRIEF FOR THE
COMMONWEALTH OF
KENTUCKY:[6]

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Brett R. Nolan
Principal Deputy Solicitor General

Daniel J. Grabowski
Assistant Solicitor General
Frankfort, Kentucky

---

[6] Because the validity of KRS 39A.275 was at issue in this matter, the Kentucky Attorney General was served and filed a brief in support of the statute's constitutionality.  *See* KRS 418.075(1).