**KENTON COUNTY PUBLIC PARKS CORPORATION, Appellant/Cross–Appellee,**

v.

**Mark A. MODLIN, Appellee/Cross–Appellant.**

**Nos. 93–CA–1128–MR, 93–CA–1134–MR (cross-appeal).**

Court of Appeals of Kentucky.

April 7, 1995.

H. Lawson Walker II, Gregory L. Evans, David J. Hale, Brown, Todd & Heyburn, Covington, R. Gregg Hovious, Brown, Todd & Heyburn, Louisville, Thomas M. Quinn, Fisherville, for appellant/cross-appellee.

Robert E. Sanders, Re. E. Sanders & Associates, P.S.C., Covington, Nicholas M. Nighswander, Edgewood, John Marshall Dosker, Phoenix, AZ, for appellee/cross-appellant.

Before COMBS, GARDNER and McDONALD, JJ.

*OPINION AFFIRMING IN PART AND REMANDING; REVERSING IN PART WITH DIRECTIONS ON DIRECT APPEAL; AFFIRMING ON CROSS-APPEAL*

McDONALD, Judge.

This appeal and cross-appeal raise various serious allegations of error; however, we are convinced by the first issue argued by the appellant that we must reverse the judgment and remand for an additional jury finding on the question of the date of the accident. The question of the applicable statute of limitations is pivotal in this appeal. The jury awarded $2,666,348.31[1] in damages on the trial of this matter; however, the issue of damages will not have to be retried regardless of the jury determination bearing on the issue of whether the complaint was timely filed. We will explain later.

The facts of the case are simple yet unusual: Mark A. Modlin, along with Circuit Judge Joseph F. Bamberger and District Judge Stanley Billingsley were playing golf at the Kenton County (Pioneer) Golf Course. The date of the event is in serious dispute. According to the Kenton County Public Parks Corporation (Kenton County PPC), appellant and cross-appellee herein, the date of the event was in March, 1987, but according to appellee, cross-appellant, Mark A. Modlin, the injury occurred on May 27, 1987.

Modlin's original complaint was filed on May 25, 1988, against the Kenton County Fiscal Court, although later, an amended complaint substituted the Kenton County PPC as sole defendant. On the day in question, in the early evening, the threesome were playing the 17th hole at the Pioneer Golf Course. Modlin left his companions in a rented golf cart to look for a missing golf club cover on the preceding green. He drove the gasoline-powered golf cart across the fairway in order to retrieve the glove.

As Modlin was travelling on the 17th fairway on his return to the group, he caused the cart to come in contact with a plastic rope which was stretched across the fairway and anchored at both ends with steel reinforcing rods implanted in the ground. The plastic rope was about a foot or so off the ground and was there to act as a barrier to protect the sod from golf cart traffic. The rope caught on the front of the cart and rode upwards, catching Modlin at his neck and jerking him from the cart. The event is best described as being "clothes lined" at the throat. The front wheels of the cart were lifted off the ground. Amazingly, Modlin was able to finish his round of golf after being tended to by his companions. The incident resulted in serious injury to Modlin.

In its appeal from the jury verdict and judgment, Kenton County PPC alleges four errors. We will discuss them in the order as presented.

■ The appellant first argues that Modlin's action is barred by the one-year statute of limitations for personal injury. Kenton County PPC insists that KRS 413.140, which provides for a one-year statute of limitations, is the applicable statute of limitations on Modlin's suit for personal injury. Because the accident involved a golf cart operated on a golf course, the appellant categorizes the

1. Final judgment entered was in the sum of $1,919,770.78, reached after application of 28% of comparative negligence assessed against Mark Modlin. The application of the doctrine of comparative negligence is the subject matter of the cross-appeal.

action as one of ordinary negligence and is not amenable to the two-year statute-of-limitations period utilized by the trial court. The applicable limitations period is critical; if the accident occurred in March, 1987, as claimed by Kenton County PPC, Modlin's claim was untimely. On the other hand, if the accident occurred as alleged in the complaint on May 27, 1987, the filing of the complaint was timely by two days.

The trial court ruled that the factual issue was moot because the golf cart was a "motor vehicle" within the meaning of Kentucky's Motor Vehicle Reparations Act (MVRA), KRS 304.39–230; therefore, a two-year statute of limitations for personal injury was applied by the trial court in its pretrial ruling.

In our opinion, a golf cart operated on a golf course fairway is not a motor vehicle contemplated by KRS 304.39–230. A motor vehicle under MVRA (KRS 304.39–020(7)) is defined as any vehicle "which transports persons or property upon the public highways of the Commonwealth." While a golf cart is capable of transporting persons or property upon a public highway and conceivably could be construed as a motor vehicle for purposes of applying MVR, the particular golf cart herein was not being operated upon a public highway at the time and, therefore, was not covered within the Act.

Modlin reasons that the statute of limitations in MVRA is applicable as "golf carts are commonly used in lieu of automobiles," and because it is "common practice" for golf carts to transport people on and across highways near golf course surroundings. Modlin's brief states: "The MVRA does not distinguish between public roadways and private property, but is applicable to any place in the Commonwealth a motor vehicle can travel." Further, Modlin states:

> [A] golf course fairway is a "public roadway" within the meanings used in the MVRA. K.R.S. 304.39–020(9) defines "public roadway" broadly enough to include golf pathways and fairways on golf courses where golf carts are driven:
>
>> Public roadway means a way open to the use of the public for purposes of motor vehicle travel.

Modlin's argument, persuasive to the trial court, that the golf course fairway is a "public roadway," so therefore a "public highway" within the meaning of MVRA, requires more of a leap in faith than a leap in logic.

A golf course fairway is not a "public highway" nor a "public roadway" within the meaning of KRS 189.010(3) or KRS 189.010(9). There is nothing more we can say about it.

Modlin's position on this issue is dependent on, in our opinion, a flawed interpretation of *Lyle v. Swanks and Madison Standard Service Station*, Ky.App., 577 S.W.2d 427 (1979). The facts of our case and the facts in *Lyle* are inconsistent. In *Lyle*, the plaintiff was injured on private property (a service station) as he was jump-starting his vehicle. The plaintiff was pinned between two motor vehicles. In *Lyle*, this Court stated: KRS 304.39.060(1) "merely defines where a motor vehicle must be 'operated, maintained, or used' in order for the law to imply one's acceptance of the limitations on his tort rights." Further, the opinion said, "[n]o attempt is made to say where an accident must occur before the limitations on tort rights imposed by the Act will apply." *Id.* at 428.

The plaintiff, Lyle, sued for personal injuries although he met none of the statutory thresholds required under KRS 304.39–060(2)(b) to restore his common-law rights to sue in tort. Lyle argued that, because the accident happened on private property, the MVRA did not apply to him and his common-law right to sue was never abolished under KRS 304.39–060(2)(a).

The case before us is distinguishable from the *Lyle* case for several reasons. First, Modlin met the statutory thresholds, if MVRA would otherwise apply; second, Modlin possessed an ordinary cause of action in tort which was not abolished by MVRA; third, the golf cart Modlin was operating at the time and place was not a vehicle within the meaning of such under MVRA; and lastly, the injury did not occur on a public highway or roadway.

In our opinion, the trial court erred as a matter of law in applying MVRA to the

circumstances attendant to the operation of the golf cart in this case. The one-year statute of limitations was applicable, which necessitates a finding of fact by the jury of the date the accident occurred. To just such an extent, the judgment of the trial court is reversed.

The second issue is that the trial court erred in failing to hold that Kenton County PPC was shielded by the Doctrine of Sovereign Immunity. Bitterly contested is which entity operated the golf course known as "Pioneer." Kenton County PPC established that it owned the land but leased it to Kenton County. Although Kenton County PPC was empowered by its Articles of Incorporation to operate the course, it did not. Kenton County through its employees actually operated the course. No proof was offered that Kenton County PPC operated the course. Therefore, the judgment entered was against the entity that was not negligent. Kenton County PPC proved it was a landlord which leased the property to the Kenton County Fiscal Court.

Regardless, whether it was Kenton County PPC or Kenton County through its Fiscal Court, the question is whether sovereign immunity was available as a defense. We conclude that sovereign immunity was not a defense.

The Articles of Incorporation of Kenton County PPC established it as a non-profit, no capital stock corporation, formed to provide recreational facilities for Kenton County. Its purposes were for the acquisition, construction and operation of golf courses in Kenton County. The board of directors of the corporation are the members of the Kenton County Fiscal Court and its county attorney. Kenton County PPC was established in 1966 and since that time has provided recreational facilities for the residents of Kenton County.

Whether Kenton County PPC has sovereign immunity depends on the application of law found in *Kentucky Center for Arts v. Berns,* Ky., 801 S.W.2d 327 (1990). The *Berns* opinion clearly points out that, "the term 'municipal corporation' is not limited to a city, and it is not only a city that 'is no longer immune from suit for tort liability' ...." *Id.* at 331–332.

Where sovereign immunity was formerly available as a shield solely for the state, it was a conditional status for a municipal corporation. Immunity would be determinative on a case-by-case basis. In between, so to speak, were those agencies, created by statutory authority, performing functions not purely governmental in nature.

Again, the *Berns* opinion sets our compass: "[A] 'municipal corporation' means nothing more than a local government entity created by the state to carry out 'designated' functions." *Id.* at 332. Herein the designated function was to provide recreational facilities for the Kenton County residents.

The analytical key is set forth on page 332 of the *Berns* opinion with this statement:

> The line between what is a state agency and what is a municipal corporation is not divided by whether the entity created by state statute is or is not a city, but whether, when viewed as a whole, the entity is carrying out a function *integral* to state government. (Emphasis ours).

In *Berns,* the facility, the Kentucky Center for Arts, was found to be for entertainment purposes of the community although, tangentially, economic benefits occurred with the promotion of tourism. Like argument could be made on behalf of the golf course herein.

Imposing the clear impact of the *Berns* opinion, we conclude that operating a golf course is not an "integral" function of state government. Thus, a statutorily created agency so functioning operates without the shield of sovereign immunity. Kenton County PPC was not created pursuant to specific statutory authority as was the Kentucky Center for the Arts in the *Berns* case. However, Kenton County PPC's operation was authorized as a proper municipal purpose, under the authority of KRS 97.010 and *Boone v. Cook,* Ky., 365 S.W.2d 100 (1963).

Since 1792, nothing could be clearer in Kentucky law than the principle that counties enjoy sovereign immunity from ordinary tort liability, the same immunity as the Commonwealth. *See* Ky. Const. § 231; Ky. Const. § 27, § 29. *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407 (1967); *Calvert Invest-*

*ments, Inc. v. Louisville & Jefferson County Metropolitan Sewer District,* Ky., 805 S.W.2d 133 (1991).

Waiver of county sovereign immunity is limited to the legislature by statute, as shown in KRS 65.200 *et seq.* and KRS 67.180. Of course, the judgment did not go against the County, although its employees were the ones who were negligent. Therefore, we need not be concerned with the County's argument about sovereign immunity. We note that the Kenton County Fiscal Court and the Kenton County PPC were so "siamesed" throughout this litigation that no one could separate the two. While the overall scheme for Kenton County PPC is to handle the bonded indebtedness for the golf courses, once the bonds are paid off the property is to be deeded to the County.

■ From what we know now, it is obvious that the verdict was adjudged against the wrong party, a non-operative, non-negligent entity who was a landlord out of possession. *See Milby v. Mears,* Ky.App., 580 S.W.2d 724, 728 (1979).

Kenton County PPC, in its brief, states:

Modlin failed to introduce evidence that any employee of Kenton County PPC acted in a negligent manner. The jury received instructions regarding Kenton County PPC and the trial Court entered judgment against it, but the jury heard no evidence regarding that entity. Modlin failed to offer sufficient evidence to support his claim.

It is our conclusion that Kenton County PPC cannot now claim the error under this assignment. Kenton County PPC has tried this case by acquiescence and implication. We support this conclusion by the following colloquy at the voir dire stage of the trial among the court and counsel:

[After questioning prospective jurors about the County as a party.]

MR. ROUSE [Counsel for Kenton County PPC]: But one of the things I wanted to be able to do, and I'll make the oral motion right now, that the fiscal court be joined, rejoined as a party to this, because if a judgment comes back in Bob's favor, in order for it to be covered by insurance, it needs to be against the fiscal court, because they're the party who's insured, and the jury doesn't need to know any of this as long as the paperwork has the right defendant insured, then I won't have any trouble convincing the insurance company that they owe whatever judgment comes back, and I wanted to do that before we got started.

THE COURT: Gentlemen, the County isn't involved.

MR. ROUSE: Oh, yes it is.

MR. SANDERS [Modlin's Counsel]: Judge, if that's so, that's the first time that this has ever been disclosed.

THE COURT: I hadn't heard of that either.

MR. ROUSE: Sure. And that's an issue that's already been preserved for appeal by motions and rulings before I got involved in this. I'm not going to play that game and I'm not going to—I really hadn't—and it was a real slip in voir dire saying your government. I'm not going to—I'm going to call it the golf course.

THE COURT: Okay.

MR. ROUSE: But I'm going to make sure that if a judgment is rendered that it's against the right parties so we can make sure we don't have any trouble getting you coverage.

MR. SANDERS: Why don't we make it against both of them because—

THE COURT: Very good.

MR. SANDERS:—I still perceive that I'm suing this corporation. If I'm suing the county too, that's okay—

MR. ROUSE: It doesn't make any difference.

It is our opinion that the issue was tried by the expressed, or at the least by the implied, consent of the parties. CR 15.02. Therefore, the judgment as it applies to Kenton County PPC is affirmed.

■ The Kenton County PPC also asserts error when the trial court prohibited the offering of an expert witness on golf course maintenance and safety. The trial court found that "resolution of the issue requires

no scientific, technical, or other specialized knowledge."

Kenton County PPC was to offer testimony of Stanley Zontek, a director and chief agronomist with the United States Golf Association, to assist the jury on the issue of the use of rope barriers in golf-course maintenance. He would have testified that "stakes and rope" method of traffic control on courses was used throughout the industry in the United States. Kenton County PPC relies on *Lexington Country Club v. Stevenson,* Ky., 390 S.W.2d 137 (1965), wherein expert testimony was used for golf-course design and layout.

We conclude that no reversible error was committed by the exclusion of the expert testimony. The *Stevenson* case, *supra,* concerned engineering testimony. Our case does not involve any technical matters. It's a question of "garden-variety negligence." Therefore, the admissibility of expert testimony will be the "call" of the trial judge, subject to our scrutiny under the standard of abuse of discretion.

There is no question about Mr. Zontek's qualifications as an expert, but in this case he had nothing so specialized to testify about. The issue was whether a golf course was negligent in putting a rope, without adequate warning, in a position where golfers could be hurt. Being a case of ordinary negligence, it required nothing more than ordinary testimony from ordinary people. The trial court's ruling is supported by KRE 702 and KRE 703. There was no error in this regard.

Upon remand, the only issue to be tried is when the accident occurred. It would be an injustice to the parties to go to the expense of another trial on damages when our review is satisfied no error occurred in that regard. Further, there is no error in the jury's assessment of Modlin's comparative fault. *See Deutsch v. Shein,* Ky., 597 S.W.2d 141, 146 (1980).

The judgment of the Kenton Circuit Court is reversed and set aside, and the issue of whether the statute of limitations is applicable is remanded for jury determination. Upon jury determination that Modlin's complaint was timely filed, then the Circuit Court is to re-enter by judgment the prior verdict against Kenton County PPC. Otherwise, Modlin's complaint is to be dismissed.

In all other respects the judgment of the Circuit Court is affirmed.

All concur.