GRAYSON COUNTY BOARD OF
EDUCATION, Appellant,

v.

Joseph W. CASEY, Appellee.

No. 2003–SC–0208–DG.

Supreme Court of Kentucky.

Feb. 17, 2005.

As Modified March 8, 2005.

Eric Allen Hamilton, Coleman, Lochmiller & Bond, Elizabethtown, Counsel for Appellant.

Max S. Hartz, McCarroll, Nunley & Hartz, Owensboro, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellee, Joseph W. Casey, is "self-employed ... in the flea market business," *i.e.*, he buys used chattels and resells them at a profit. In December 1998, the Grayson County Board of Education (Board) held an auction of its surplus property. Although Casey did not attend the auction, an unidentified person notified him that he could obtain two used air conditioners simply by coming to Grayson County High School and removing them. On December 29, 1998, Casey drove his flat bed truck to the high school to pick up the air conditioners. When he arrived, one of the Board's maintenance employees, not further identified, advised Casey that he could also have four surplus steel doors if he would agree to take them. Casey agreed, and the maintenance employee undertook to load the air conditioners and doors onto Casey's truck by use of a forklift. Unfortunately, one of the doors slid off the forklift and struck Casey, injuring his neck, back and legs. He filed a civil action in the Grayson Circuit Court solely against the Board seeking to hold it liable for the damages he sustained as a result of the negligent operation of the forklift by the Board's employee. The Grayson Circuit Court entered summary judgment in favor of the Board. The Court of Appeals reversed and we granted discretionary review. We now reverse the Court of Appeals and reinstate the judgment of the Grayson Circuit Court.

A board of education is an agency of state government and is cloaked with

governmental immunity; thus, it can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute. *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003); *Yanero v. Davis*, 65 S.W.3d 510, 526–27 (Ky.2001). Although an employee of a board of education can be sued in a judicial court for damages caused by the negligent performance of a ministerial duty, *Schwindel*, 113 S.W.3d at 169; *Williams v. Ky. Dep't. of Educ.*, 113 S.W.3d 145, 155 (Ky.2003); *Yanero*, 65 S.W.3d at 529, the board cannot be held vicariously liable in a judicial court because of the employee's negligence. *Williams*, 113 S.W.3d at 154; *Yanero*, 65 S.W.3d at 527. The Board of Claims Act is a partial waiver of immunity that permits a person damaged by a board of education's negligent performance of a governmental function to file a claim for damages in the Board of Claims, including a claim premised upon vicarious liability for the torts of the board of education's employees. KRS 44.070(1); KRS 44.072; KRS 44.073(2); *Williams*, 113 S.W.3d at 154–56. Since Casey's action was brought in a judicial court and not in the Board of Claims, the Grayson Circuit Court properly dismissed it unless (1) the sale or disposal of surplus property by the Board was a proprietary function, in which case the Board would not be immune; or (2) the General Assembly has statutorily waived the Board's immunity.

The Court of Appeals held that the sale or disposal of surplus property by the Grayson County Board of Education was a governmental, not a proprietary, function. That issue was not preserved by a cross-appeal, CR 76.21, thus is not before us for

further review. *Green River Dist. Health Dep't v. Wigginton*, 764 S.W.2d 475, 479 (Ky.1989), *abrogated by statute on other grounds as recognized by Withers v. Univ. of Ky.*, 939 S.W.2d 340, 346 (Ky.1997).

However, the Court of Appeals also held that "by overwhelming implication," KRS 160.310 constitutes a partial waiver of the governmental immunity of boards of education to the extent of the policy limits of any liability insurance policy purchased under the authority of that statute. Having so concluded, the Court of Appeals did not address Casey's other contentions that KRS 160.160(1) and the 1998 budget bill (House Bill 321, Part V, § 35 (Ky.1998)) also waived the Board's governmental immunity.

## I. KRS 160.310.

There is a degree of déjà vu associated with this issue, because we indirectly construed KRS 160.310 in both *Withers* and *Reyes v. Hardin County*, 55 S.W.3d 337 (Ky.2001). However, we were not required in either case to specifically hold whether the statute provided a waiver of a board of education's governmental immunity. As initially enacted in 1940[1] and compiled as KS 4399–20a and 4399–20b, the statute read:

Each board of education shall have power and authority to set aside funds to provide for liability and indemnity insurance against the negligence of the drivers or operators of school busses owned or operated by the board.

The indemnity bond or insurance policy shall be issued by some surety or insurance company or other insurance carrier duly authorized to transact business as such within this Commonwealth, and *shall bind the surety, insurance company, or insurance carrier to pay any*

1. 1940 Ky. Acts, ch. 65.

*final judgment or judgments rendered against the insured* or policy holder arising out of the death or injury to any school child or school children, for loss or damage to property of any such school children, or death or injury to any person or persons.

If the transportation of pupils be let out under contract, then such contract shall provide that the contractor shall carry indemnity or liability insurance against negligence in such an amount as the board of education may require and designate, said indemnity bond or insurance to be provided by a duly authorized surety or insurance company or other insurance carrier as set out in the foregoing paragraph.

(Emphasis added.) When the statutes were revised in 1942, KS 4399–20a and 4399–20b were combined and recompiled as KRS 160.310 to read:

Each board of education may set aside funds to provide for liability and indemnity insurance against the negligence of the drivers or operators of school busses owned or operated by the board. If the transportation of pupils is let out under contract, the contract shall require the contractor to carry indemnity or liability insurance against negligence in such amount as the board designates. In either case, the indemnity bond or insurance policy shall be issued by some surety or insurance company authorized to transact business in this state, and *shall bind the company to pay any final judgment rendered against the insured* for loss or damage to property of any school child or death or injury of any school child or other person.

KRS 160.310 (Banks–Baldwin 1942) (current version at KRS 160.310 (Michie 1999)) (emphasis added).

In *Taylor v. Knox County Board of Education*, 292 Ky. 767, 167 S.W.2d 700 (1942), our predecessor court held that the statute "does not make the board liable for the torts of its agents and employees, *but it does permit the board to be sued* and a judgment to be obtained which, when final, shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued." *Id.*, 167 S.W.2d at 702 (emphasis added). In 1960, the General Assembly amended KRS 160.310[2] so that the statute now reads, *inter alia*, that the policy "shall bind the company to pay any final judgment *not to exceed the limits of the policy* rendered against the insured . . . ." (Emphasis added.) Obviously, the new language only codified *Taylor*'s construction of the original language.

*Taylor* was decided prior to the 1946 enactment[3] and the 1950 amendment[4] of the Board of Claims Act. Following *Taylor*, we and our predecessor court applied its reasoning to a number of other statutes that either authorized or required a government agency to purchase a policy of liability insurance but did not expressly waive governmental immunity, holding that such statutes constituted implied waivers of governmental immunity to the extent of the liability limits of any insurance policy so purchased. *See Reyes*, 55 S.W.3d at 339, and *Withers*, 939 S.W.2d at 344 n. 4, for citations to the so-called "*Taylor*-line of cases" and the statutes interpreted by those cases. In partial response to those holdings, *see Withers*, 939 S.W.2d at 345, the General Assembly substantially revised the Board of Claims Act in 1986 to

**2.** 1960 Ky. Acts, ch. 97.

**3.** 1946 Ky. Acts, ch. 189, §§ 1, 3, par. 1.

**4.** 1950 Ky. Acts, ch. 50, § 1.

declare, *inter alia*, its intention to retain the inherent immunities of the Commonwealth, its agencies, and its employees, except where specifically waived by the Act or another statute.

> The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth. It is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity[5] of the Commonwealth, any of its cabinets, departments, bureaus or agencies or any of its officers, agents or employees while acting in the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies in all other situations *except where sovereign immunity[6] is specifically and expressly waived as set forth by statute.*

KRS 44.072[7] (emphasis added). Directly addressing the *Taylor*-line of cases, the General Assembly then provided:

> The ... *purchase of liability insurance or the establishment of a fund for self insurance* by the Commonwealth, its cabinets, departments, bureaus, or agencies or its agents, officers, or employees thereof for a government-related purpose or duty *shall not be construed as a waiver of sovereign immunity or any other immunity or privilege thereby held ....*

KRS 44.073(14)[8] (emphasis added). *Withers* held that the 1986 amendments of the Board of Claims Act abrogated the *Taylor*-line of cases, and that "[h]enceforth, ... [w]e will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave *no room for any other reasonable construction.*" 939 S.W.2d at 346 (emphasis added) (internal citations and quotations omitted). Absent such waiver, claims for damages against the Commonwealth, agencies enjoying governmental immunity, and employees enjoying official immunity "may be heard in the Board of Claims, but not elsewhere." *Id.*

■ In *Reyes v. Hardin County*, we assumed that the abrogation of the "*Taylor*-line of cases," as recognized by *Withers*, 939 S.W.2d at 346, also abrogated *Taylor*'s construction of KRS 160.310, and compared the language of that statute to the language of KRS 67.186, which we were construing in *Reyes*, 55 S.W.3d at 341. Notwithstanding Casey's protestations to the contrary, the language contained in KRS 67.186(1) and (2) is virtually identical to that contained in KRS 160.310, even after the 1960 amendment of the latter that added the language, "not to exceed the limits of the policy." Specifically, KRS 67.186(1) and (2) provide:

(1) The fiscal court of any county in which there is a county operated hospital may provide for liability and indemnity insurance for the benefit of the hospital against the negligence of the employees of such hospital.

(2) The insurance policies so purchased by the fiscal court shall be purchased only from insurance companies authorized to transact business in this state, and any such policy shall bind the insurer to pay, subject

---

5. As noted in *Yanero,* 65 S.W.3d at 519, it was common in 1986 to interchange the terms "sovereign" and "governmental" immunity. We interpret the reference to "sovereign immunity" in this statute to include governmental immunity of state agencies and qualified official immunity of state employees where applicable.

6. *See* note 6, *supra.*

7. 1986 Ky. Acts, ch. 499, § 1.

8. 1986 Ky. Acts, ch. 499, § 2(14).

to the terms and conditions of the policy, *any final judgment, not in excess of the policy limits, rendered against the insured* hospital or hospital employees for the death or injury of any patient, or damage to the property of any patient, resulting from the negligence of the hospital, its agents or employees.

(Emphasis added.)

*Reyes* found that the language of KRS 67.186(1) and (2), standing alone, did not satisfy the *Withers* test, 55 S.W.3d at 340, thereby strongly implying that the virtually identical language of KRS 160.310 was also insufficient. *Compare* KRS 67.180(2), expressly authorizing suits against counties having insurance coverage for motor vehicle accidents and workers' compensation claims:

*Suits* instituted on such policies *may be maintained against the county* only for the purpose of obtaining a judgment which when final shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued, but not to be enforced or collectible against the county or fiscal court or the members thereof.

(Emphasis added.) That language constitutes an express, though limited, waiver of a county's sovereign immunity.[9] *Monroe County v. Rouse*, 274 S.W.2d 477, 479 (Ky. 1954). In *Reyes*, 55 S.W.3d at 340, 342, we held the following language in KRS 67.186(3) to constitute a waiver of immunity per *Withers* "by such overwhelming implications from the text as [will] leave no room for any other reasonable construction":

This section shall not be construed as waiving the immunity of the county or county operated hospital from suit *only to the extent of the policy limits,* and no judgment may be enforced or collected against the county, fiscal court, the members thereof, or such hospital but shall only measure the liability of the insurance carrier. No attempt shall be made *in the trial of any suit* to suggest the existence of any insurance which covers in whole or in part any judgment or award which has been rendered in favor of the claimant, but *if the verdict rendered by the jury* exceeds the limits of applicable insurance, *the court* shall reduce the amount of said judgment to a sum equal to the applicable limit stated in the policy.

(Emphasis added.) *Reyes* noted that the first clause of KRS 67.186(3) codified the holding in *Ginter v. Montgomery County*, 327 S.W.2d 98, 100 (Ky.1959), that waiver of a county's sovereign immunity is triggered only by the actual purchase of liability insurance and is not triggered when a county *fails* to purchase insurance though authorized to do so. *Reyes*, 55 S.W.3d at 341–42. *Reyes* then held that references in the remainder of the subsection to "the trial of any suit," a "verdict rendered by the jury," and a reduction of the judgment by "the court," left "no room for any other reasonable construction," per *Withers*, except that the purchase by a county of a policy of insurance under KRS 67.186 authorized a suit in a judicial court against that county for damages not to exceed the liability insurance limits of the policy purchased. *Reyes*, 55 S.W.3d at 343.

---

**9.** Note that claims against counties cannot be brought in the Board of Claims. *Commonwealth v. Harris*, 59 S.W.3d 896, 901 (Ky. 2001). In addition to the waiver in KRS 67.180(2), KRS 65.2005 requires a county to pay any judgment rendered against a county employee because of the negligent performance of a ministerial act, subject to certain exceptions and limitations. *Schwindel*, 113 S.W.3d at 167.

Unlike KRS 67.186(3), KRS 160.310 contains no references to suits, jury verdicts, or courts. Like KRS 67.186(2), it only requires the insurer to pay any final judgment rendered against the insured, not to exceed the policy limits. Immunity, however, means immunity from suit. *Lexington–Fayette Urban County Gov't v. Smolcic,* 142 S.W.3d 128, 135–36 (Ky.2004). To the extent that an entity is immune from suit, perforce no judgment can be rendered against it in a judicial court. Thus, we conclude that KRS 160.310 does not waive a board of education's governmental immunity from suit either expressly or by "such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Withers,* 939 S.W.2d at 346. In fact, one reasonable construction of KRS 160.310 is that it authorizes a board of education to purchase a policy of liability insurance that provides coverage for suits brought in judicial courts when the board or its employee is not cloaked with immunity, *e.g.,* when the board is sued for damages caused while performing a proprietary function, or when an employee is sued for damages caused by the negligent performance of a ministerial act or the bad-faith performance of a discretionary act.[10] We overrule *Taylor v. Knox County Board of Education,* 292 Ky. 767, 167 S.W.2d 700 (1942), and *Board of Education of Rockcastle County v. Kirby,* 926 S.W.2d 455 (Ky.1996), to the extent that they hold that KRS 161.310 provides a waiver of a board of education's governmental immunity.

## II. KRS 160.160(1).

■ Casey also asserts that the following language in KRS 160.160(1) constitutes a waiver of a board of education's govern-

mental immunity against suit in a judicial court:

> Each board of education shall be a body politic and corporate with perpetual succession. *It may sue and be sued;* make contracts; *expend funds necessary for liability insurance premiums and for the defense of any civil action brought against an individual board member in his official or individual capacity, or both, on account of an act made in the scope and course of his performance of legal duties as a board member;* ...

(Emphasis added.) We have already held in this opinion and in *Withers,* 939 S.W.2d at 346, that mere authorization to purchase liability insurance does not constitute an implied waiver of immunity. Since Casey did not sue any individual Board members of the Grayson County Board of Education, we are not now required to construe the statutory language authorizing the expenditure of funds for the defense of a civil action brought against an individual board member "in his official ... capacity." However, in *Wallace v. Laurel County Board of Education,* 287 Ky. 454, 153 S.W.2d 915 (1941), our predecessor court held that the "sue and be sued" language in KRS 160.160(1) authorizes suits on contracts or to protect one's property, but not for torts. *Id.,* 153 S.W.2d at 917. We agree and also overrule *Board of Education of Rockcastle County v. Kirby* to the extent that it can be construed to hold otherwise.

## III. 1998 BUDGET BILL.

■ The biennial budget bill enacted by the 1998 General Assembly contained the following provision:

> Notwithstanding any provision of the Kentucky Revised Statutes to the con-

---

**10.** Because Casey filed his claim in circuit court and not in the Board of Claims, we need not address the suggestion raised at oral argument that the policy might also provide coverage for awards or judgments of the Board of Claims.

trary, to the extent that any governmental agency purchases *motor vehicle liability insurance,* sovereign immunity shall be waived to the extent of the insurance coverage.

House Bill 321, ch. 615, Part III, § 35 (Ky.1998).[11]

The assistant superintendent of Grayson County Schools testified that the Board had purchased a motor vehicle liability insurance policy that provided coverage for school buses and maintenance vehicles but did not provide coverage for forklift accidents. A copy of that policy was furnished to Casey's attorney but was not filed in this record. The Comprehensive Business Policy issued by the Indiana Insurance Company that is at issue in this case provides general liability coverage, including coverage for forklift accidents, but specifically excludes "commercial auto coverage." Casey argued at the trial level that a forklift was a "motor vehicle" as defined in KRS 189.010(19) and KRS 304.39–020(7), apparently hoping to convert his forklift accident into a motor vehicle accident and thereby convert the board of education's general liability insurance policy into a motor vehicle liability insurance policy for purposes of section 35 of Part III of House Bill 321. The Grayson Circuit Court held that a forklift is not a motor vehicle, citing *Manies v. Croan,* 977 S.W.2d 22, 23 (Ky. App.1998) (all-terrain vehicle is not a motor vehicle), and *Kenton County Public Parks Corp. v. Modlin,* 901 S.W.2d 876, 878 (Ky.App.1995) (golf cart being operated on a golf course is not a motor vehicle).

Casey has not pursued that issue on appeal.

Furthermore, we agree with the Grayson County Board of Education that section 35 of Part III of the 1998 budget bill violated the first clause of Section 51 of the Constitution of Kentucky,[12] *viz.:*

> No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title . . . .

The title of House Bill 321 was:

> AN ACT relating to appropriations providing financing for the operations, maintenance, support, and functioning of the government of the Commonwealth of Kentucky and its various officers, cabinets, departments, boards, commissions, institutions, subdivisions, agencies, and other state supported activities.[13]

■ The purpose of Section 51 "was to prevent the evil that had grown up of legislating in one act upon as many distinct and wholly disconnected subjects as the legislative body saw fit, without any indication in the title of the act as to what its contents might be." *Talbott v. Laffoon,* 257 Ky. 773, 79 S.W.2d 244, 246 (1934). It was intended to prevent surprise and fraud upon the members of the General Assembly and other interested parties, thus precluding the practice of "log rolling." *Commonwealth, ex rel. Meredith v. Johnson,* 292 Ky. 288, 166 S.W.2d 409, 411 (1942). In *Commonwealth, ex rel. Armstrong v. Collins,* 709 S.W.2d at 444, we held that the General Assembly could in its biennial budget bill suspend or modify

---

11. 1998 Ky. Acts, ch. 615, Part III, § 35, at 3849.

12. The provision expired at the conclusion of the biennium on June 30, 2000. KRS 48.310(1); *Commonwealth, ex rel. Armstrong v. Collins,* 709 S.W.2d 437, 445 (Ky.1986) (suspension or modification of statute by bud-

get bill provision "is temporary only, expiring at the end of the biennium"). Thus, whatever effect the provision may have had on KRS 44.073(14) existed only during the period July 1, 1998 to June 30, 2000.

13. 1998 Ky. Acts, ch. 615, at 3747.

existing statutes if the suspensions or modifications were germane to the broad subject of appropriations, *e.g.*, the suspension of statutes providing for automatic raises for state employees. Section 35 of Part III of the 1998 budget bill, however, was not germane in any way to "appropriations providing financing for the operations, maintenance, support, and functioning" of any governmental agency. It did not authorize the purchase of automobile liability insurance and did not require the Commonwealth to pay any judgment, much less appropriate any state funds for either purpose. The only statute it attempted to modify was KRS 44.073(14) (purchase of insurance does not waive immunity), which also did not authorize the purchase of insurance or require the Commonwealth to pay any judgment, or appropriate any state funds for either purpose. Because the waiver embodied in section 35 was not germane to the subject of the biennial budget bill and was not stated in its title, we hold that section 35 of Part III of the 1998 budget bill was unconstitutional. Ky. Const. § 51.

Accordingly, we reverse the Court of Appeals and reinstate the judgment of the Grayson Circuit Court.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER, and SCOTT, JJ., concur.

WINTERSHEIMER, J., concurs in result only without separate opinion.