RENDERED: AUGUST 26, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0291-MR

IMANI BAPTIST CHURCH, INC.
D/B/A IMANI FAMILY LIFE
CENTER, INC.                                                                    APPELLANT


                         APPEAL FROM FAYETTE CIRCUIT COURT
v.                       HONORABLE THOMAS L. TRAVIS, JUDGE
                         ACTION NO. 20-CI-02699


FAYETTE COUNTY BOARD OF
EDUCATION AND LEXINGTON
CENTRAL BANK & TRUST
COMPANY                                                                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: The Imani Baptist Church, Inc. d/b/a Imani Family Life

Center, Inc. appeals an order of the trial court granting dispositive relief to the

Appellees and dismissing the action filed in the Fayette Circuit Court. After

reviewing the order, the briefs of the parties, and the record below, we affirm the trial court.

## FACTS

A new religious organization was organized in Lexington in 1997 and was incorporated as Imani Missionary Baptist Church, Inc. The next year, the Church incorporated a new entity, the Imani Family Life Center, Inc., with the intention of building a center which would become a beacon in the neighborhood and would provide community building and recreational opportunities for its members and the community at large.

After raising funds and engaging supporters for this noble purpose, the Church purchased twenty-two (22) acres of land on Georgetown Road in Fayette County. In 2006, a large facility was built to house the ministries, community activities, and programs of both entities – the Church and the Family Life Center.

As part of the funding required to allow the entities to pursue its missions, in 2012 the incorporated entities signed a promissory note to Central Bank in an original amount over $10 million. The entities soon defaulted on the note and the Bank sued in 2016.[1] After the Master Commissioner was appointed as Receiver for the property, a new entity was incorporated, Imani Baptist Church,

---

[1] Fayette Circuit Court Action No. 16-CI-01925.

Inc. This new entity executed a lease with the Master Commissioner as Receiver to use part of the building. Imani Baptist Church did not appear on any deeds related to the subject property.

The circuit court ordered the parties – the Imani Missionary Baptist Church (hereinafter "Old Church"), the Imani Family Life Center (hereinafter "Imani Life"), Central Bank (hereinafter "the Bank") and, in its capacity as lessee, the Imani Baptist Church (hereinafter "New Church") – to meet with the Master Commissioner and attempt to settle the matter. A settlement agreement was reached. Under the agreement, Old Church and Imani Life were given time to secure funds from another lender to satisfy a reduced amount owed to the Bank. An Agreed Judgment executed by the parties was to be retained by the Master Commissioner and would be filed under seal only if Imani Life and Old Church failed to secure funding to satisfy the Bank. Also required as part of the settlement were executed Agreed Orders of Sale; an Agreed Order of Stipulation releasing all claims against the Bank and others executed by Imani Life, Old Church, and New Church (as a lessee); and a Non-Disturbance Agreement from the Bank for a Class A tenant if Imani Life were to secure such a tenant. These were all to be retained and would be effective only if the Agreed Judgment was made effective by the failure to secure funding.

Old Church and Imani Life failed to secure a new lender. Therefore, in 2017, the Master Commissioner entered the Agreed Judgment, and the associated documents. The Agreed Judgment was in favor of the Bank in an amount greater than $11 million. The property was sold by the Master Commissioner pursuant to the Agreed Order of Sale in October of 2017 and the Bank was the successful bidder. Ultimately, the Fayette County Board of Education (the "Board") obtained the property and utilized it for educational purposes.

Following the sale, Imani Life, Old Church, and New Church all executed releases of liability in favor of the Bank. The litigation ended in early 2018. Imani Life and Old Church soon thereafter failed to file required documents with the Kentucky Secretary of State's office to remain ongoing entities and were administratively dissolved in 2018.

It was not until 2020 that the instant case was filed by New Church against the Bank and the Board. New Church sought damages for detrimental reliance, tortious interference with prospective business relations, and breach of good faith and fair dealing. All of the claims stemmed from Old Church and Imani Life's allegation that the Bank and the Board conspired to obtain the property from Old Church and Imani Life after there was an unsuccessful attempt to negotiate a

lease in favor of the Board between the parties during the settlement negotiations before the foreclosure action was filed.

The Fayette Circuit Court considered all pending motions at a hearing on November 13, 2020, held via Zoom due to the novel coronavirus pandemic, which was then at its peak. The trial court granted the Board's motion to dismiss it, finding that the doctrine of sovereign immunity applied and, therefore, the court had no jurisdiction over the matter. The court also found that the Bank was entitled to summary judgment because the Plaintiff named in the suit – New Church – was not the entity which had owned the subject property and because the dispute had previously been litigated and the doctrine of *res judicata* precluded revisiting the matter. The Plaintiff's pending motion to file a third amended complaint was denied, as was the Bank's motion for sanctions under CR[2] 11. It is from this order that the Appellant seeks relief. We affirm.

**STANDARD OF REVIEW**

A trial court's ruling on a motion pursuant to CR 12.02 involves pure questions of law, and the standard of review is, therefore, *de novo*. Trial court determinations on motions for summary judgment pursuant to CR 56 are reviewed for "whether the trial court correctly found that there were no genuine issues as to

---

[2] Kentucky Rules of Civil Procedure.

any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ANALYSIS

At the outset we must address the Appellees' contentions that New Church has failed to file a brief which comports to the minimal requirements of CR 76.12(4), in that it contains not one citation to the record on appeal. Despite the convoluted and factually dense history of this matter, Imani Life provides not one citation to the record in its Statement of the Case, nor are there any citations to the record in the Argument section of Imani Life's brief. Placing documents from the record in the Appendix to the brief and then citing to the Appendix is simply insufficient.[3]

The rules of appellate procedure are necessary to the efficiency and fairness of the system of justice and are not mere formalities. Fairness to all litigants and advocates requires that we hold parties to the plain rules in filing

---

[3] While appending items to the brief enables each member of this Court to quickly review certain documents, it does not obviate the specific language of the rule. Furthermore, an appellate court cannot consider items that were not first presented to the trial court. By citing us to the specific location of the item in the record, we can confirm the document was presented to the trial court and is properly before us. Substantial compliance with CR 76.12 is essential and mandatory.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

-6-

documents and require that they, at a minimum, make a cognizable attempt to comply with the Rules.

Were we not to hold the parties which appear before us to at least attempting to comply with the requirements outlined in the Civil Rules, such would be inconsistent with the prior holdings of this Court and the Kentucky Supreme Court.

> Supporting factual assertions with pinpoint citations may, in fact, be the most substantial requirement of CR 76.12. Without pinpoint citations to the record, a court "must sift through a record to [find] the basis for a claim for relief." Expeditious relief would cease to exist without this requirement. "It is well-settled that an appellate court will not sift through a voluminous record to try to ascertain facts when a party has failed to comply with its obligation under [our rules of procedure] . . . to provide specific references to the record."

*Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019) (citations omitted).

Citing to where in the record a factual assertion is supported is no mere formality, but ensures that this Court is reviewing errors which have an actual factual predicate and are not hypothetical or which constitute hyperbole.

> The Court went on to provide detailed reasons for the procedural rules and concluding that "the rules are not only a matter of judicial convenience. They help assure the reviewing court that the arguments are intellectually and ethically honest." [*Hallis v. Hallis*, 328 S.W.3d 694, 697 (Ky. App. 2010)].

*Mullins v. Ashland Oil, Inc.*, 389 S.W.3d 149, 153 (Ky. App. 2012).

When presented with an appellant's brief which does not comport to the plain and unambiguous requirements of the Rules, we have several options for how we may proceed. We may: 1) ignore the deficiencies and proceed to review the arguments presented; 2) strike the brief and dismiss the appeal; or 3) review the matter for manifest injustice only. *See Hallis*, 328 S.W.3d at 695-96.[4] As the deficiencies presented to us presently are matters of formatting, and not related to the preservation of the legal arguments below, reviewing for manifest injustice is not appropriate. *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("A review of both *Hallis* [*supra*] and *Elwell* [*infra*] make clear that the manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation"). Therefore, we may either ignore the deficiencies of the Appellant's brief and move on to review the legal arguments therein, or we may strike the brief and dismiss the appeal.

---

[4] At the outset, we note that Vaughn's appellate brief deviates significantly from the format mandated by Kentucky Rule of Civil Procedure (CR) 76.12. In addition to a number of relatively minor omissions and improper formatting decisions we need not detail here, Vaughn's brief includes no citations to the record and no statement of preservation of the issues he raises on appeal. Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990).

Because this matter concerns the entry of orders granting dismissal and summary judgment, we will review the arguments presented. However, we emphatically caution counsel to ensure compliance with the Rules in presenting filings to this Court and the Kentucky Supreme Court. Failure to do so could result in dismissal of the appeal.

Turning now to the matter before this Court, we will review the order of the trial court dismissing the action by New Church, it being the only extant entity, against the Board. We will then review the trial court's ruling granting summary judgment in favor of the Bank.

### a. The grant of dismissal in favor of the Board

The trial court granted the Board's motion to dismiss pursuant to CR 12.02, finding that the Board was entitled to sovereign immunity, which effectively wrested jurisdiction from the court.[5] We find this conclusion to be erroneous.

---

[5] Section 112(5) places *original jurisdiction* over a case in the circuit court; this means that all cases, not expressly designated by a rule of law to be heard by another court, must appear before the circuit court, the trial court of general jurisdiction. And recall that the circuit court "shall have original jurisdiction of all *justiciable causes*." If a case is not *justiciable*, specifically because the plaintiff does not have the requisite standing to sue, then the circuit court *cannot* hear the case. And because both this Court and the Court of Appeals "shall have *appellate jurisdiction only*," logically speaking, neither court can adjudicate a case on appeal that a circuit court cannot adjudicate because the exercise of appellate jurisdiction *necessarily assumes* that proper original jurisdiction has been established first at some point in the case.

In *Yanero v. Davis*, cited by the court, the Kentucky Supreme Court made it clear that local boards of education are entitled to *governmental immunity,* but are not entitled to *sovereign immunity*. 65 S.W.3d 510 (Ky. 2001). "The absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought." *Id.* at 518. In the present case, the Commonwealth was not the real party in interest, rather the Fayette County Board of Education was. Thus, the Board is not entitled to *sovereign immunity*, but rather to *governmental immunity*, as an agency of the local government.

"'[G]overnmental immunity' is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on

> Therefore, if a circuit court cannot maintain proper original jurisdiction over a case to decide its merits because the case is *nonjusticiable* due to the plaintiff's failure to satisfy the constitutional standing requirement, the Court of Appeals and this Court are constitutionally precluded from exercising appellate jurisdiction over that case to decide its merits. This is so because the exercise of appellate jurisdiction to decide the merits of a case necessarily assumes that proper original jurisdiction in the circuit court first exists. Stated more simply, establishing the requisite ability to sue in circuit court is a necessary predicate for continuing that suit in appellate court. In this way, the *justiciable cause* requirement applies to cases at all levels of judicial relief.

*Commonwealth, Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton by & through Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 196-97 (Ky. 2018) (emphasis in original) (citations omitted).

a government agency." *Id.* at 519 (citing 57 AM.JUR.2d, *Municipal, County,*

*School and State Tort Liability* § 10 (2001)).

> Turning to the merits of the Board's immunity claim, we note first that an agency of the state government enjoys what is termed "governmental immunity" from civil damages actions. *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). Governmental immunity, as explained in *Yanero*, is a public policy, derived from the doctrine of sovereign immunity, which is premised on the notion "that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political or economic policy." 65 S.W.3d at 519. Given this underpinning, governmental immunity shields state agencies from liability for damages only for those acts which constitute governmental functions, *i.e.*, public acts integral in some way to state government. *Id.* The immunity does not extend, however, to agency acts which serve merely proprietary ends, *i.e.*, non-integral undertakings of a sort private persons or businesses might engage in for profit. *Id.* Under these rules, we have held that

>> [a] board of education is an agency of state government and is cloaked with governmental immunity; thus, it can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute.

*Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009) (quoting

*Grayson County Board of Education v. Casey*, 157 S.W.3d 201, 201-03 (Ky.

2005)).

We hold that the Board was engaged in its governmental function of furthering education when it sought to and did obtain the space in which to provide educational opportunities to the students enrolled in schools administered by the Board. Thus, although we find the court erroneously declared that sovereign immunity applied here, we agree that it was appropriate to dismiss the suit against the Board, but rather because of governmental immunity.

*b. The entry of summary judgment in favor of the Bank*

The trial court also granted the Bank's motion for dismissal, treating it as a motion for summary judgment pursuant to CR 56. The trial court held that the entity which filed the suit, New Church, was not the same entity which had owned the property. The court noted that New Church was not listed on any mortgage or loan documents executed by the Bank. Therefore, the trial court determined that New Church did not have standing to maintain the suit and entered summary judgment.

The plaintiff in the instant suit was named as "Imani Baptist Church, Inc. d/b/a Imani Family Life Center, Inc." (New Church). New Church is not the entity which owned the subject property at the time the suit was filed and was not the mortgagee. Rather, Old Church and Imani Life, though both administratively dissolved for failure to timely file an Annual Report, were the maker and guarantor of the mortgage and, therefore, the proper parties. New Church was only a lessee

-12-

under a month-to-month lease with the Receiver after Old Church & Imani Life defaulted on the mortgage and the foreclosure action was filed. Since the named plaintiff in the underlying action to this matter did not have an ownership interest, it could not maintain an action alleging damages for various torts it alleged were committed by the Bank. We find the trial court properly entered summary judgment because it was clear, due to lack of standing, that the named plaintiff below could not establish that there were "genuine issue[s] as to any material fact" and therefore the Bank was "entitled to judgment as a matter of law." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480-81 (Ky. 1991).

Likewise, we agree with the trial court's determination that the Agreed Order of Sale which was held in reserve by the Master Commissioner as part of the settlement attempt between Old Church and Imani Life and the Bank, which was entered after Old Church and Imani Life failed to secure financing to stave off the foreclosure action, acts as a bar to this action.

The doctrine of *res judicata* prohibits the re-litigation of those controversies which have already been adjudicated by a court. However, New Church answers this allegation by denying it is the same entity which was involved

in the prior suit and suggesting that therefore the privity of parties required for the

application of *res judicata* is absent.[6]

The Kentucky Supreme Court succinctly defined the theory of *res judicata* and its application in *Yeoman v. Commonwealth Health Policy Board*:

> The rule of res judicata is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. *Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); *Worton v. Worton*, 234 Cal.App.3d 1638, 286 Cal.Rptr. 410 (2 Dist. 1991), *rev. denied* (Cal) 1992 LEXIS 472; *County of Rutherford by Child Support Enforcement Agency v. Whitener*, 100 N.C. App. 70, 394 S.E.2d 263 (1990); Vestal, *The Constitution and Preclusion – Res Judicata*, 62 Mich.L.Rev. 33. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action. *Worton*, 234 Cal.App.3d at 1638, 286 Cal.Rptr. 410; *Commonwealth, Dept. of Transp. v. Crawford*, 121 Pa. Cmwlth. 613, 550 A.2d 1053 (1988).
>
> For claim preclusion to bar further litigation, certain elements must be present. First, there must be identity of

---

[6] It is not lost on us that by making such argument, New Church is all but admitting that they do not have standing to maintain the suit, as we have already held.

the parties. *Newman v. Newman*, Ky., 451 S.W.2d 417, 419 (1970). Second, there must be identity of the causes of action. *Id*. Third, the action must have been resolved on the merits. *Id*. The rule that issues which have been once litigated cannot be the subject matter of a later action is not only salutary, but necessary to the speedy and efficient administration of justice.

983 S.W.2d 459, 464-65 (Ky. 1998) (footnote omitted).

It cannot be denied that this action concerns the same controversy arising from the same transactional nucleus of facts as in the prior adjudicated case. As pointed out by the Bank, New Church acknowledged having no interest in the subject property, other than as lessee, in the former action which was resolved by the settlement and eventual entry of the Agreed Orders of Judgment, Sale, and Stipulation.

We do agree with New Church that there is not privity of parties such as is required for claim preclusion. The Appellant in this matter is not the same as Plaintiff in the prior manner, thus there is not privity of parties. As we have already held, New Church has no standing as they never held an ownership interest in the subject property, nor was it a signatory on the mortgage. Rather, New Church held only a leasehold interest with the Receiver. "Under the doctrine of issue preclusion the parties do not have to be identical in each action." *Miller v. Admin. Off. of Cts.*, 361 S.W.3d 867, 872 (Ky. 2011).

However, *res judicata* does not require that both subparts of issue preclusion and claim preclusion apply to bar subsequent litigation. It is enough that we hold issue preclusion applies here and thus we find that the trial court's finding that "the causes of action are otherwise barred by the doctrine of res judicata" is not in error. We hold, more specifically, that it is the subpart of the doctrine of *res judicata* known as issue preclusion which applies here and compels this result. The former litigation established that New Church held no ownership interest in the property but held only a leasehold interest. As that fact cannot be relitigated, it is fatal to New Church's claims, which are based upon ownership of the property.

Finally, the entity which filed the underlying action, New Church, was also a party in the former case as lessee and expressly waived all claims against the Bank in the Agreed Order of Stipulation. New Church must be held to that agreement.

## CONCLUSION

Thus, we hold the trial court was correct in dismissing the action against the Board, but not because of sovereign immunity, but because governmental immunity applies to bar the action. We further hold that the action against the Bank was properly concluded summarily by the trial court in the Bank's favor as the theory of issue preclusion requires such, and because the

named Appellant had no interest in the subject property such as to have standing. And further, because they had previously stipulated to waiving any claims New Church held against the Bank.

We affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aubrey Williams
Louisville, Kentucky

BRIEF FOR APPELLEE CENTRAL BANK & TRUST CO.:

Tyler Powell
Lexington, Kentucky

BRIEF FOR APPELLEE FAYETTE COUNTY BOARD OF EDUCATION:

Joshua M. Salsburey
Donald C. Morgan
Lexington, Kentucky